HERWEG ET VIR *v.* RAY, GOVERNOR OF IOWA, ET AL.

No. 80–60.   Argued January 13, 1982—Decided February 23, 1982

REHNQUIST, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, and O'CONNOR, JJ., joined. STEVENS, J., filed an opinion concurring in part, *post*, p. 278. BURGER, C. J., filed a dissenting opinion, *post*, p. 279.

*Neal S. Dudovitz* argued the cause for petitioners. With him on the briefs were *Christine M. Luzzie* and *Gill Deford*.

*Brent R. Appel*, First Assistant Attorney General of Iowa, argued the cause for respondents. With him on the brief were *Thomas J. Miller*, Attorney General, *John Black*, Special Assistant Attorney General, and *Stephen C. Robinson*, Assistant Attorney General.*

---

*Briefs of *amici curiae* urging reversal were filed by *Solicitor General Lee, Deputy Solicitor General Geller*, and *Robert P. Jaye* for the United States; and by *Silvia Drew Ivie* for the Gray Panthers.

JUSTICE REHNQUIST delivered the opinion of the Court.

Last Term in *Schweiker* v. *Gray Panthers*, 453 U. S. 34, 49–50 (1981), we upheld the validity of federal Medicaid regulations that permit "deeming" of income between spouses in those States that have exercised the so-called "§ 209(b) option" provided for in the Social Security Act, 79 Stat. 343, as amended, 42 U. S. C. § 1396 *et seq.* (1976 ed. and Supp. III). "Deeming," in the parlance of the Social Security laws and regulations, means that a State determines eligibility by assuming that a portion of the spouse's income is "available" to the applicant. Because an individual's eligibility for Medicaid benefits depends in part on the financial resources that are "available" to him, "[d]eeming . . . has the effect of reducing both the number of eligible individuals and the amount of assistance paid to those who qualify." *Schweiker* v. *Gray Panthers, supra,* at 36. We rejected contentions that these regulations were arbitrary or capricious and that the regulations were inconsistent with § 1902(a)(17) of the Social Security Act, 42 U. S. C. § 1396a(a)(17).[1]  453 U. S., at 43.  In

---

[1] Section 1902(a)(17) provides that a state plan for medical assistance must

"include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient . . . (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or (with respect to States eligible to participate in the State program established under subchapter XVI of this chapter), is blind or permanently and totally disabled, or is blind or disabled as defined in section 1382c of this title (with respect to States which are not eligible to participate in such program); and provide for flexibility in the application of such standards with respect to income by taking into account, except to the extent prescribed by the Secretary, the costs (whether in the form of insurance premiums or otherwise) incurred for medical care or for any

the present case, we are called upon to decide to what extent the State of Iowa, an "SSI State," may consider the income of the institutionalized Medicaid applicant's noninstitutionalized spouse in determining eligibility for Medicaid.

As we explained in greater detail in *Gray Panthers, supra,* Medicaid as originally enacted "required participating States to provide medical assistance to 'categorically needy' individuals who received cash payments under one of four welfare programs established elsewhere in the [Social Security] Act." *Id.,* at 37. This program was restructured in 1972 by Congress, when it replaced three of the four categorical programs with Supplemental Security Income for the Aged, Blind, and Disabled (SSI), 42 U. S. C. § 1381 *et seq.* (1976 ed. and Supp. III). Fearing that some States might withdraw from the Medicaid program rather than bear the increased costs imposed by the restructuring, Congress offered the States the "§ 209(b) option." 42 U. S. C. § 1396a(f). Under the § 209(b) option, the States may elect to provide Medicaid assistance only to those individuals who would have been eligible under the State's Medicaid plan in effect on January 1, 1972. In other words, the § 209(b) option allows the States to avoid the effect of the link between the SSI and Medicaid programs: States may become either "§ 209(b) States" or "SSI States."

If a State participates in the Medicaid program without exercising the § 209(b) option, the State is required to make Medicaid assistance available to all recipients of SSI benefits. 42 U. S. C. § 1396a(a)(10)(A); 42 CFR § 435.120 (1980).[2] SSI States, however, are not limited to providing Medicaid benefits to SSI recipients. The Medicaid program offers participating States the option of providing Medicaid assist-

---

other type of remedial care recognized under State law." 42 U. S. C. § 1396a(a)(17).

[2] The SSI program, in turn, has its own eligibility requirements, which include "deeming" provisions. See 42 U. S. C. §§ 1382, 1382c(b), (f)(1).

ance to certain other groups of individuals, see 42 U. S. C. § 1396a(a)(10)(C), one of which is the "optional categorically needy." See 42 CFR §§ 435.200–435.231 (1980).[3] Included among the "optional categorically needy," are (1) individuals who would be eligible for, but for some reason are not receiving, SSI benefits and (2) individuals who would be eligible for SSI benefits but for their institutionalized status. 42 CFR §§ 435.210–435.211 (1980).

With regard to the "optional categorically needy," the Secretary's regulations require the States to "deem" the income and resources of spouses who share the same household. 42 CFR § 435.723(b) (1980). Where both spouses are eligible for Medicaid, the States must "deem" income for the first six months after the spouses cease to live together. After this 6-month period, the States may consider only the income and resources actually contributed by one spouse to the other. § 435.723(c). If only one spouse is eligible for Medicaid, a similar rule applies but the time period is one month instead of six. § 435.723(d).[4] In effect, § 435.723 places time limita-

---

[3] The States, if they choose to do so, may extend Medicaid coverage to the "medically needy." 42 U. S. C. § 1396a(a)(10)(C); 42 CFR §§ 435.300–435.325, 435.800–435.845 (1980). Since Iowa does not extend Medicaid assistance to the medically needy, the Secretary's deeming regulations applicable to this optional program are not at issue in this case. See 42 CFR § 435.822 (1980).

[4] Title 42 CFR § 435.723 (1980) provides:

"(a) If the agency provides Medicaid to SSI recipients, it must meet the requirements of this section in determining eligibility of aged, blind, and disabled individuals under the optional coverage provisions of §§ 435.210, 435.211, and 435.231.

"(b) The agency must consider income and resources of spouses living in the same household as available to each other, whether or not they are actually contributed.

"(c) If both spouses apply or are eligible as aged, blind, or disabled and cease to live together, the agency must consider their income and resources as available to each other for the first 6 months after the month they cease to live together. After this 6-month period, the agency must

tions on the States' ability to consider the spouse's income as "available" to the applicant after the spouses cease to live together. The question addressed by the lower courts, and now presented for our decision, is whether this regulation is a permissible exercise of the Secretary's authority under the Act to define what income is "available."

## I

Petitioner Elvina Herweg has been in a comatose state since August 1976 as a result of two cerebral hemorrhages. When she was placed in a long-term care facility, her husband, petitioner Darrell Herweg, applied for Medicaid assistance on Elvina's behalf. Elvina does not receive SSI benefits, although the parties and the United States as *amicus curiae* agree that she is eligible to receive such benefits.[5] Iowa applied its own formula to determine Elvina's eligibility for Medicaid and to ascertain the amount Darrell would be required to contribute toward his wife's care. This formula was based on the income Darrell earned as a butcher and on standard living allowances allowed Darrell and his three children living at home. In other words, Iowa was "deeming," or attributing, income earned by one spouse to the other.

Iowa, however, was deeming in a manner inconsistent with the Secretary's regulations, which place time limitations upon the States' ability to consider as available to the applicant his spouse's income where the spouses do not share the same household. *Supra*, at 269 and this page, and n. 4. Because Elvina was institutionalized and because Darrell is not

consider only the income and resources that are actually contributed by one spouse to the other.

"(d) If only one spouse in a couple applies or is eligible and they cease to live together, the agency must consider only the income and resources of the ineligible spouse that are actually contributed to the eligible spouse after the month in which they cease to live together."

[5] Elvina, therefore, is considered part of the optional categorically needy. 42 CFR § 435.210 (1980).

eligible for Medicaid, the Secretary's regulations prohibit Iowa from considering Darrell's income after one month from the time the couple ceased to live together. See 42 CFR § 435.723(d) (1980).

Petitioners filed the instant suit in the United States District Court for the Southern District of Iowa challenging Iowa's "deeming" of the income of a Medicaid applicant's spouse.[6] After certifying a class of plaintiffs,[7] the District Court held that § 1902(a)(17) of the Social Security Act, 42 U. S. C. § 1396a(a)(17), required Iowa's procedures to "provide for a factual determination in each instance of the amount of the spouse's income which is in fact reasonably available for the support of the institutionalized spouse. . . . Such determination must give due consideration to the individual obligations and the particular needs of each spouse and family." 443 F. Supp. 1315, 1319 (1978). In interpreting § 1902(a)(17), the District Court concluded that "'deeming' is contrary to congressional intent whether income of the non-institutionalized spouse is deemed available or unavailable." Id., at 1320. The District Court noted that the predecessor to 42 CFR 435.723 (1980)[8] was inconsistent with its interpretation of § 1902(a)(17). In the District Court's view, therefore, the Secretary's regulation was inconsistent with

---

[6] Petitioners' challenge was based both on statutory and constitutional grounds. Petitioners contended that Iowa's procedures were in conflict with § 1902(a)(17) of the Social Security Act and with the Secretary's regulations, now codified at 42 CFR § 435.723 (1980). Petitioners also contended that Iowa's procedures violated the Equal Protection Clause and the Due Process Clause. Petitioners' constitutional claims were not considered either by the District Court or by the Court of Appeals and are not before this Court.

[7] The District Court certified a class consisting of "all married couples residing in Iowa of which: (1) one spouse is eligible for Medicaid and requires institutionalization; and (2) the other spouse is not institutionalized; and (3) the non-institutionalized spouse has income which is, under current state procedures, being deemed available to the institutionalized spouse." 443 F. Supp. 1315, 1320 (1978).

[8] 45 CFR § 248.3 (1976).

§ 1902(a)(17) because the regulation disabled the States in certain instances from considering the spouse's income as available to the applicant.

In response to this order, Iowa adopted a procedure for making individualized factual determinations of the amount of income available to an institutionalized spouse. The District Court approved this plan and petitioners appealed. The Court of Appeals for the Eighth Circuit affirmed by an equally divided Court. 619 F. 2d 1265 (1980) (en banc). We reverse.

## II

Although Elvina Herweg does not receive SSI benefits, the class certified without objection by the District Court includes SSI recipients. We therefore construe the order entered by the District Court, and the plan adopted by Iowa in response, as applying both to SSI recipients and to the optional categorically needy.

## A

With regard to recipients of SSI benefits, the District Court's order clearly conflicts with § 1902(a)(10)(A) of the Social Security Act, 42 U. S. C. § 1396a(a)(10)(A), which requires States not having exercised the § 209(b) option to provide Medicaid assistance to all SSI recipients.[9] 42 CFR § 435.120 (1980). See *Beltran* v. *Myers*, 451 U. S. 625, 626, n. 3 (1981). The SSI program, contained in Title XVI of the Social Security Act, 42 U. S. C. § 1382 *et seq.* (1976 ed. and Supp. III), contains its own eligibility provisions. See, *e. g.*, 42 U. S. C. §§ 1382(a)(1), 1382c(b), (f)(1). Pursuant to the District Court's order, however, Iowa is permitted to deny

---

[9] Section 1902(a)(10)(A) requires a state Medicaid plan to provide "for making medical assistance available to all individuals receiving aid or assistance under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, *or with respect to whom supplemental security income benefits are being paid under subchapter XVI of this chapter . . . .*" 42 U. S. C. § 1396a(a)(10)(A) (emphasis added).

Medicaid benefits to institutionalized SSI recipients if, after making an individualized factual determination, Iowa concludes that the income of the SSI recipient's spouse should be considered available even though it was not actually contributed. Because Congress has clearly spoken in this regard, to the extent it permits Iowa to deny Medicaid assistance to SSI recipients, the District Court's order cannot stand.[10]

In requiring individualized determinations of income available to the Medicaid applicant, the District Court held that the Secretary has exceeded his authority in permitting any "deeming" whatsoever. In *Schweiker* v. *Gray Panthers*, 453 U. S., at 45, however, we held that Congress intended to permit a state Medicaid plan to deem the income from the applicant's spouse as part of the available income which the state plan may consider in determining eligibility. Thus, to the extent that the District Court's order forbids deeming under any circumstances, the order conflicts with our decision in *Gray Panthers*.

### B

The issue that remains, therefore, is whether § 1902(a)(17) precludes the Secretary from promulgating regulations that impose time limitations upon the States' ability to consider the income of the institutionalized applicant's spouse.

---

[10] Although we do not believe that § 1902(a)(10)(A) can be characterized as ambiguous in this regard, the legislative history of the original Medicaid statute is rather explicit in requiring the participating States to provide medical assistance to recipients under the four categorical welfare programs then in existence. "[A] State plan to be approved must include provision for medical assistance for all individuals receiving aid or assistance under State plans approved under titles I, IV, X, XIV, and XVI. It is only if this group is provided for that States may include medical assistance to the less needy." S. Rep. No. 404, 89th Cong., 1st Sess., 77 (1965). Titles I, X, and XVI were respectively Old Age Assistance, Aid to the Blind, and Aid to the Permanently and Totally Disabled, the three categorical welfare programs replaced by SSI. See *Schweiker* v. *Gray Panthers*, 453 U. S. 34, 37–38, and nn. 1, 3 (1981). We find nothing in the adoption of the SSI program that would alter the meaning of § 1902(a)(10)(A).

Relying on § 1902(a)(17)(D),[11] respondents argue that the Secretary has exceeded his authority in placing time limitations upon the States' authority to consider the financial responsibility of spouses.  Subsection (17)(D), respondents argue, evidences Congress' intent to permit the States to consider the financial responsibility of spouses and parents. Nothing in the statute or the legislative history,[12] respondents contend, suggests that Congress intended to prevent the States from enforcing their financial responsibility policies simply because the Medicaid applicant is institutionalized.

We think, however, that respondents overemphasize the effect of subsection (17)(D).  That provision may not be read independently of subsection (17)(B).  Subsection (17)(B) provides that participating States must grant benefits to eligible individuals "taking into account only such income and resources as are, *as determined in accordance with standards prescribed by the Secretary*, available to the applicant."  42 U. S. C. § 1396a(a)(17)(B) (emphasis added).  In *Gray Panthers*, we recognized that subsection (17)(B) delegates to the Secretary broad authority to prescribe standards setting eligibility requirements for state Medicaid plans.  In view of Congress' explicit delegation of authority to give substance to the meaning of "available," the Secretary's definition of the term is "'entitled to more than mere deference or weight.'"

---

[11] Section 1902(a)(17)(D) provides that the States' standards for determining eligibility for, and the extent of, Medicaid assistance may "not take into account the financial responsibility of any individual for any applicant or recipient under the plan unless such applicant or recipient is such individual's spouse or such individual's child . . . ."  42 U. S. C. § 1396a(a)(17)(D).

[12] Respondents rely in particular on a portion of the 1965 Senate Report we quoted in *Gray Panthers:*

"The committee believes it is proper to expect spouses to support each other and parents to be held accountable for the support of their minor children and their blind or permanently and totally disabled children." S. Rep. No. 404, 89th Cong., 1st Sess., 78.

*Schweiker* v. *Gray Panthers, supra,* at 44, quoting *Batterton* v. *Francis,* 432 U. S. 416, 426 (1977). Because Congress has entrusted the primary responsibility of interpreting a statutory term to the Secretary rather than to the courts, his definition is entitled to "'legislative effect.'" *Schweiker* v. *Gray Panthers, supra,* at 44; *Batterton* v. *Francis, supra,* at 426. As in *Gray Panthers* and *Batterton,* our review is limited to determining whether the Secretary has exceeded his statutory authority and whether the regulation is arbitrary and capricious.

Although Congress has approved of some deeming of income between Medicaid applicants and their spouses, *Schweiker* v. *Gray Panthers, supra,* at 48, we cannot agree with respondents that Congress intended the States to enforce their spousal responsibility policies wholly unimpeded by the Secretary's congressionally authorized power to give substance to the term "available." In placing time limitations upon the States' ability to consider the spouse's income where the Medicaid applicant and his spouse no longer live together, the Secretary has done *nothing more than define* what income is "available." Although Congress intended that a spouse's income *could be* part of the income which the Secretary may determine should be considered by the States as available to the Medicaid applicant, *Schweiker* v. *Gray Panthers, supra,* at 45, we see nothing in subsection (17)(D) that precludes the Secretary from imposing upon the States the time limits at issue in the instant case. We find nothing in subsection (17)(D) either that disables the Secretary from defining the term "available" in such circumstances, or that gives the States authority to "deem" income unimpeded by the Secretary's authority under subsection (17)(B).[13] Subsection (17)(D) cannot

---

[13] Contrary to the dissent, we do not interpret subsection (17)(D) as "authorizing" the States to deem, without any limitation, income between spouses. That subsection simply prohibits the States from considering the financial responsibility of any individual for the Medicaid applicant *unless* that individual is the applicant's spouse or parent. See nn. 1, 11, *supra.*

be read to *require* the Secretary to permit the States to consider the income of a spouse no longer living with the applicant as available to the applicant for an unlimited duration.

Although we do not agree with the contention of the United States, and apparently that of petitioners, that the time limitations in 42 CFR § 435.723 (1980) are *compelled* by the relationship between the Medicaid and SSI programs, we do agree that the Secretary may acknowledge this relationship in defining "availability" of income with regard to Medicaid applicants within the optional categories. As we have explained, the optional categorically needy consists in part of those individuals who are eligible for, but are not receiving, SSI benefits and those individuals who, but for their institutionalization, would be eligible for SSI benefits. *Supra*, at 269. Since these groups are defined in part with regard to SSI income limitations, it is reasonable that the Secretary should determine that States electing to provide Medicaid assistance to the optional categorically needy should apply a similar method for calculating income as that employed in the SSI program. The 1-month and 6-month limitations in 42 CFR § 435.723 (1980) are virtually identical to the SSI requirements. See 42 U. S. C. §§ 1382(a)(1), 1382c(b), (f)(1). We cannot say that it is either arbitrary or capricious for the Secretary to conclude that SSI recipients and the optional categorically needy should be treated similarly with respect to the method used for calculating income in determining whether the State is entitled to receive federal financial assistance under the Medicaid program.

In upholding the Secretary's limitation on deeming, we do not thereby render subsection (17)(D) meaningless. That provision, however, may not be read in isolation from the other provisions of the Social Security Act. We have no doubt that some tension exists between the Secretary's congressionally authorized power under subsection (17)(B) to determine what income is "available" to the applicant and Congress' intent in subsection (17)(D) to permit the States to

enforce their spousal responsibility policies.[14]   Because Congress in subsection (17)(B) has delegated broad authority to the Secretary to set eligibility standards for the Medicaid program, however, we cannot say that the Secretary's regulations placing time limitations on the States' ability to deem income between spouses who do not share the same household are unreasonable or contrary to law.   A reviewing court may not set aside the Secretary's regulations "simply because it would have interpreted the statute in a different manner." *Batterton* v. *Francis, supra,* at 425.   *A fortiori,* Iowa may not ignore federal regulations simply because it interprets § 1902(a)(17) in a manner it considers preferable to the Secretary's interpretation.

This would be a different case, and respondents' arguments more compelling, if the Secretary had sought to use his authority under subsection (17)(B) to foreclose entirely the States' ability to consider the income of the institutionalized applicant's spouse.   Such a reading of the statute could well render subsection (17)(D) superfluous.   See *Schweiker* v. *Gray Panthers,* 453 U. S., at 45.   The Secretary's regulations, however, impose no such across-the-board limitation on the States' ability to implement their spousal responsibility policies.   The challenged regulation applies only to those SSI States that have decided to extend Medicaid benefits to the optional categorically needy, and it prohibits deeming only after the spouses have ceased to live together for prescribed periods of time.

On the contrary, 42 CFR § 435.723 (1980) is simply an exception to the general rule that the spouse's income may be considered available to the applicant.   With regard to the optional categorically needy, SSI States are *required* to deem

---

[14] As conceded by petitioners at oral argument, Tr. of Oral Arg. 9, Iowa is free to obtain reimbursement from the noninstitutionalized spouse in a lawsuit brought under its family responsibility laws.   We recognize that such lawsuits may not be a uniformly practical alternative.   See *Schweiker* v. *Gray Panthers,* 453 U. S., at 46.

the income and resources of spouses living in the same household. § 435.723(b). States exercising the § 209(b) option are *required* to deem income to the extent required in SSI States and may deem to the full extent they did before 1972. § 435.734. See *Schweiker* v. *Gray Panthers, supra,* at 40.[15] Finally, the SSI applicant is considered to a similar extent to have available to him his spouse's income and financial resources. See n. 2, *supra.*

We conclude that the Secretary need not interpret § 1902 (a)(17) to require an individualized factual determination in each instance as to the amount of income of an applicant's spouse that may reasonably be considered available to the applicant. With regard to SSI recipients in SSI States, such an interpretation would be contrary to § 1902(a)(10)(A), 42 U. S. C. § 1396a(a)(10)(A). With regard to the optional categorically needy, we find that the Secretary has not exceeded his authority in promulgating 42 CFR § 435.723 (1980), and that this regulation is neither arbitrary nor capricious. Accordingly, we reverse the judgment of the Court of Appeals for the Eight Circuit and remand for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, concurring in part.

The Court speculates that subsection 17(D) might well be superfluous if subsection 17(B) were read to permit the Secretary to foreclose entirely the States' ability to consider the income of the spouse of an institutionalized applicant. *Ante,*

---

[15] To a certain extent, therefore, the barriers Iowa faces in implementing its spousal responsibility policies are attributable to the choices it has made with regard to the Medicaid options available. Iowa has decided to become an SSI State rather than a § 209(b) State. The Secretary permits SSI States to opt for "'§ 209(b) status' at any time." *Schweiker* v. *Gray Panthers, supra,* at 39, n. 6. In addition, Iowa is subject to 42 CFR § 435.723 (1980) only because it has decided to extend Medicaid assistance to the optional categorical needy. § 435.700.

at 277. This speculation apparently is predicated on the belief that subsection 17(D) *requires* the States to deem certain income of an applicant's spouse to be available to the applicant. The Court's observation is both unnecessary and misleading.[2] Subsection 17(D), like subsection 17(B), places a limit on the extent to which an applicant's income may be deemed to include contributions from other sources. Nothing in the language of either subsection requires that any spousal income be deemed to be available to an applicant.

Apart from the Court's speculation concerning a regulation that does not exist, I join its opinion.

CHIEF JUSTICE BURGER, dissenting.

Although the Medicaid program is a morass of bureaucratic complexity, I do not believe it is nearly so difficult to apply the Social Security Act in this case as the Court makes it seem. Iowa is an "SSI State." This means that, under § 1902(a)(10)(A) of the Act, 42 U. S. C. § 1396a(a)(10)(A), it must develop a plan "for making medical assistance available to all individuals receiving . . . supplemental security income benefits . . . ." As part of the plan Iowa developed, a noninstitutionalized spouse must contribute toward the care of an institutionalized spouse. This is explicitly authorized by § 1902(a)(17)(D), 42 U. S. C. § 1396a(a)(17)(D), which prohibits a state from reducing the amount of Medicaid assistance to be made available to a recipient because of the financial responsibility of another person, *unless the other person is the recipient's spouse* or parent. See *ante*, at 267–268, n. 1.

---

[1] In *Schweiker* v. *Gray Panthers*, 453 U. S. 34, 45, the Court noted that subsection 17(D) might be superfluous if the statute were not read to *permit* certain deeming, see also 453 U. S., at 52 (STEVENS, J., dissenting); the Court did not suggest that any amount of deeming was required by the statute.

[2] As THE CHIEF JUSTICE notes in his dissenting opinion, it also is more consistent with his analysis of the case than with the Court's. See *post*, at 280–281, n. 2.

What could be more clear in words and purpose? Any doubt vanishes when we look at what Congress spelled out in the legislative history: "The committee believes it is proper to expect spouses to support each other . . . ." S. Rep. No. 404, 89th Cong., 1st Sess., 78 (1965).[1] In short, I conclude that Iowa's "deeming" procedure is authorized by subsection 17(D).

The Court apparently believes that Iowa overemphasizes the importance of subsection (17)(D). See *ante*, at 274. It bases its conclusion on subsection (17)(B), which delegates to the Secretary of Health and Human Services the task of determining what income is "available" to an institutionalized spouse. The applicable regulation promulgated by the Secretary goes 180 degrees contrary to the expressed will of Congress and prohibits states from taking the income of a noninstitutionalized spouse into account after the month in which the SSI recipient is institutionalized. 42 CFR § 435.723(d) (1980); see *ante*, at 269–270, n. 4. In *Schweiker* v. *Gray Panthers*, 453 U. S. 34 (1981), and *Batterton* v. *Francis*, 432 U. S. 416 (1977), we held that the Secretary's definition of "available" is entitled to great weight. I do not believe, however, that the Secretary may by regulation practically rewrite a portion of the statute. The statute is entitled to greater weight than the regulation, which was promulgated by the Secretary's staff, which apparently regarded the statute as too rigid.[2]

---

[1] As applied to the tragic facts of this case, Iowa's plan required Mr. Herweg to contribute $234.80 each month toward the care of his wife in 1976. His gross monthly income was $1,350 at that time, and her monthly medical expenses were approximately $1,374.

[2] The Court admits that this would be a different case if the Secretary issued a regulation totally foreclosing states from "deeming" a noninstitutionalized spouse's income available to an institutionalized spouse. Such a regulation would "render subsection 17(D) superfluous." *Ante*, at 277. Yet the Court approves the prohibition of "deeming" after a prescribed period of institutionalization, in this case a period of one month. Moreover, although the Secretary interprets his regulation to prohibit "deeming"

All the parties agree that Iowa may enforce its family responsibility laws despite the Secretary's regulation. See *ante*, at 277, n. 14. This means that Iowa may sue a noninstitutionalized spouse for partial reimbursement for Medicaid payments under its laws. All Iowa may not do is "deem" a noninstitutionalized spouse's income available to support an institutionalized spouse. We compared the practicality of family responsibility laws and "deeming" in the 1980 Term, and concluded:

> "It is not 'an answer to say that the state can take action against the spouse to recover that which the spouse was legally obligated to pay. [It is] unrealistic to think that the state will engage in a multiplicity of continuing individual lawsuits to recover the money that it should not have had to pay out in the first place. [Because States cannot practically do so, there would be] an open invitation for the spouse to decide that he or she does not wish to make the excess payment.' *Brown* v. *Stanton*, 617 F. 2d 1224, 1234 (CA7 1980) (Pell, J., dissenting in part and concurring in part) . . . ." *Schweiker* v. *Gray Panthers*, *supra*, at 46.

There is nothing in the difference between "SSI states" and "§ 209(b) states" that makes enforcement of family responsibility laws more practical in one than in the other.

The effect of the Court's decision will be to reduce the amount of Medicaid assistance available to those most in need. As we noted in *Gray Panthers*, some spouses will accept this open invitation of the "regulators" not to support an institutionalized spouse. In many cases, noncontributing spouses will get away with not contributing because the

---

after one month of institutionalization, as written it appears to prohibit "deeming" even sooner. The regulation prohibits "deeming" "after the month in which" a spouse is institutionalized. See *ante*, at 270, n. 4. Thus, a literal interpretation of the regulation would prohibit "deeming" on February 1 in the case of a spouse institutionalized on January 31.

states will decide that it is not worth the effort to attempt to enforce their state laws. In other cases, funds that could go to those most in need will be diverted to pay the salaries of the lawyers and others needed to enforce the family responsibility laws. In both cases, a diversion of funds from those most in need will occur.

The Court's approach also undermines the states' role as partners in this cooperative federal-state program. By deciding to become an "SSI state" rather than a "§ 209(b) state," Iowa has chosen to allocate its resources to cover a greater number of people. By deciding to "deem" a portion of a noninstitutionalized spouse's income available to an institutionalized spouse, Iowa can reduce the cost of the additional coverage. In enacting subsection 17(D), Congress determined that the responsibility of a noninstitutionalized spouse for an institutionalized spouse is a matter best left to the judgment of the states. Yet the Court today moves the determination of spousal responsibility from the states to a federal agency.

In sum, the Court gets lost in the Medicaid maze, and ends up overruling a statute by giving greater weight to a regulation prepared by an agency staff than to the law as drafted by Congress. Subsection 17(D) was enacted expressly to permit the states to choose to require that spouses support each other. The Court seems to overlook that Congress intended to leave these choices to the states, since the regulation for all practical purposes prohibits states from making their own decisions based on their own perceptions of local needs. Since the regulation conflicts with subsection 17(D), it should be held invalid.