**TEXAS HEALTH CARE ASSOCIATION, a Texas Corporation; ARA Centers of Texas, Inc.**

v.

**Otis R. BOWEN, Secretary, Department of Health and Human Services; United States of America; Charles Stevenson, Acting Commissioner of the Texas Department of Human Services; Dennis Jones, Commissioner of the Texas Department of Mental Health and Mental Retardation; Robert Bernstein, Commissioner of the Texas Department of Health.**

Civ. No. A–89–CA–045.

United States District Court,
W.D. Texas,
Austin Division.

Feb. 21, 1989.

Charles Herring, Jr., Small, Craig & Werkenthin, Dennis Reese (co-counsel), Small, Craig & Werkenthin, Austin, Tex., for plaintiffs.

Sharon S. Pierce, Asst. U.S. Atty., Jeffrey Golland, Sr. Coordinating Atty., Office of the Gen. Counsel, Dept. of Health & Human Services, Austin, Tex., for Otis R. Bowen, Dept. Health & Human Services.

Toni Hunter, Deputy Chief, General Litigation Div., Austin, Tex., for Dennis Jones, Com'r of the Texas Dept. of Mental Health and Mental Retardation.

Edwin N. Horne, Asst. Atty. Gen., General Litigation Div., Austin, Tex., for Robert Bernstein, Commissioner, and Charles Stevenson, Acting Com'r, of the Texas Dept. of Health.

## MEMORANDUM OPINION AND ORDER

NOWLIN, District Judge.

Before the Court is the Plaintiffs' Motion for Preliminary Injunction. In a suit filed January 19, 1989, the Plaintiffs requested temporary injunctive relief, but at the request of the Court, agreed to consolidate that issue with the preliminary injunction hearing. That hearing was held on January 27, 1989, and all parties appeared

through counsel. The Court received briefs from all parties, as well as numerous affidavits and declarations. With leave of Court granted in a separate order this date, Advocacy, Inc. and United Cerebral Palsy Assoc. of Texas, Inc. filed an *amicus curiae* brief on behalf of themselves and those Texans with developmental disabilities and mental illness. Having considered all of these materials, the argument of counsel, and all of the other pleadings in the record, the Court is of the view that the Plaintiffs' request for injunctive relief should be GRANTED.

## I. BACKGROUND

In 1987 the Congress passed the Omnibus Budget Reconciliation Act ("OBRA"), which contained significant statutory amendments to the Medicaid laws, aimed at the nursing home industry. It appears to be uncontested that the revisions were intended to end the inappropriate placement of mentally ill and mentally retarded individuals in nursing homes not equipped to deal with such individuals' special needs. Among other changes, OBRA requires that nursing homes "pre-screen" admittees for mental illness or mental retardation, and refer individuals with a positive finding for either condition to the State for proper placement. In order to implement this screening process, the statute required the Secretary of Health and Human Services to develop minimum criteria for the program no later than October 1, 1988, and also required the States to have an appropriate screening program in place by January 1, 1989. As to the Secretary's burden, the relevant provisions state:

> Minimum criteria.—The Secretary shall develop, by not later than October 1, 1988, minimum criteria for States to use in making determinations under subsection (b)(3)(F) and (e)(7)(B) and in permitting individuals adversely affected to appeal such determinations, and shall notify the States of such criteria.

42 U.S.C. § 1396r(f)(8)(A). Concerning the States' duties, the statute provides:

> Preadmission screening.—Effective January 1, 1989, the State must have in effect a preadmission screening program, for making determinations (using any criteria developed under subsection (f)(8) of this section) described in subsection (b)(3)(F) for mentally ill and mentally retarded individuals (as defined in subparagraph (G)) who are admitted to nursing facilities on or after January 1, 1989. The failure of the Secretary to develop minimum criteria under subsection (f)(8) of this section shall not relieve any State of its responsibility to have a preadmission screening program under this subparagraph or to perform resident reviews under subparagraph (B).

42 U.S.C. § 1396r(e)(7)(A).

The Plaintiffs complain that both the Secretary and the State of Texas have failed to fulfill their responsibilities under OBRA. The net result, they argue, has been chaos and confusion within the nursing home industry. The Secretary responds that he has promulgated draft criteria, and has circulated these to the States, thus fulfilling his obligation under the statute. The Secretary also argues that OBRA creates an independent obligation for the States to implement a screening program even if the Secretary fails to fulfill his statutory duty. The Plaintiffs respond that to the extent these criteria *have* been promulgated (as they are clearly labeled "DRAFT"), they violate the Administrative Procedure Act ("APA"), as no period for public comment was provided, nor were the criteria published in the *Federal Register*. The Plaintiffs also point out that although the statute provides that the States must implement a program even if the Secretary fails to develop minimum criteria, the statute unequivocally imposes a duty upon the Secretary to develop such criteria.

The State defendants argue that they have complied with OBRA by publishing regulations (although skeletal in nature), and by making amendments to the forms that must be filled out upon the admittance of anyone to a nursing home. The Plaintiffs argue that the "regulations" that have been implemented are hopelessly vague, and simply track the statute. They further argue that they should not be forced to rely on the unpublished, unofficial (and

probably unenforceable) assurances they receive from the State defendants. They argue that the State defendants should be forced to publish their regulations, and that until such time, the Plaintiffs should not be subject to sanction for noncompliance.

## II. STANDARD OF REVIEW

The Court must review the Plaintiffs' motion under the well-established rule that an injunction may not issue unless the movant shows the existence of four facts:

1. There is a substantial likelihood that the movant will succeed on the merits of his claim;

2. The movant will suffer irreparable injury if the injunction is not issued;

3. The respondent will suffer a relative lack of harm if the injunction is issued; and

4. Entry of the injunction will not disserve the public interest.

*Interox America v. PPS Industries, Inc.,* 736 F.2d 194, 198 (5th Cir.1984).

## III. DISCUSSION

### A. *Preliminary Issues*

■ Both the State and federal defendants argue that the Plaintiffs lack standing to assert any claims on behalf of their patients. They therefore assert that to the extent the Plaintiffs are attempting to make such claims, their suit should be dismissed. The law, however, does not support this argument. It appears that most, if not all, of the Courts that have addressed this issue have concluded that Medicaid providers and their Medicaid patients have identical interests in Medicaid funding and reimbursement issues. In the most recent decision, the Tenth Circuit permitted nursing homes to assert Medicaid arguments on behalf of their patients. *Colorado Health Care Ass'n v. Colorado Department of Social Services,* 842 F.2d 1158, 1164 n. 5 (10th Cir.1988). *See also Coos Bay Care Center v. State of Oregon,* 803 F.2d 1060, 1063 (9th Cir.1986). Accordingly, the Court finds that the Plaintiffs have standing to make the arguments they have asserted on behalf of their Medicaid patients.

The State defendants have also argued that this suit should be dismissed for Eleventh Amendment reasons. The State defendants admit, however, that under *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1984) this Court has the authority to impose prospective injunctive relief against them. Insofar as the preliminary injunction issue is concerned, therefore, the motion to dismiss is not relevant.

### B. *Likelihood of Success*
#### 1. *The Secretary's compliance with OBRA*

■ The Secretary argues that he has complied with OBRA by formulating and circulating draft criteria. The statute, however, says nothing about draft criteria. Rather, the statute requires the Secretary to "develop minimum criteria for States to use," and mandated that the criteria be developed no later than October 1, 1988. 42 U.S.C. § 1396r(f)(8)(A). Moreover, the criteria created have not been offered for comment, and have not been published in the *Federal Register.*

The Secretary argues that by requiring him to "develop" criteria, the Congress did not intend that the Secretary had to publish such criteria. The APA provides, in relevant part, that:

Each agency shall separately state and currently publish in the *Federal Register* for the guidance of the public—

\*   \*   \*   \*   \*   \*

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency....

5 U.S.C. § 552(a)(1). The APA also provides for the opportunity for public comment prior to implementation of such rules. 5 U.S.C. § 553. The APA defines "rule" as:

the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy....

5 U.S.C. § 551(4). A review of the draft criteria created by the Secretary leads the Court to the conclusion that the criteria are "rules" as defined by the APA, and thus were required to be published and offered for comment. The semantical argument made by the Secretary has been made before in other contexts, and has usually failed. *See e.g., Batterton v. Marshall,* 648 F.2d 694, 704 (D.C.Cir.1980) ("statistical methodology" a rule under APA); *Lewis–Mota v. Secretary of Labor,* 469 F.2d 478, 480–82 (2d Cir.1972) (finding a "directive" to be rule); *Herron v. Heckler,* 576 F.Supp. 218, 230 (N.D.Cal.1983) ("staff instructions" and "claims manual instructions" were rules). As the Plaintiffs point out, it appears that Congress' delegation of authority to the Secretary to flesh out the statute probably bestows legislative effect upon the Secretary's criteria. *See Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977); *Herwig v. Ray,* 455 U.S. 265, 102 S.Ct. 1059, 71 L.Ed.2d 137 (1982). It is thus unlikely that Congress intended to allow the Secretary to develop such important criteria outside the requirements of the APA.

The Secretary himself seems to have understood this. In the cover letter that was sent with the draft criteria, he stated:

> While these criteria were developed through extensive consultation, we recognize that there continue to be aspects of them upon which consensus is not complete. In order to assure maximum consideration of other views, we plan to publish them in the *Federal Register* for comment, after which time they will be binding on the States.

Exhibit A to Crawford Affidavit. The Secretary is in no position to argue that the criteria Congress ordered him to develop are not binding, and therefore need not be published, when his own statements indicate to the contrary. Further confusing things, the top of this same letter contains the inscription: "NEW IMPLEMENTING INSTRUCTION—EFFECTIVE DATE: January 1, 1989." How can non-binding criteria have an effective date? Indeed, in response to a letter sent by the American Health Care Association requesting that the Secretary give it assurances that it would not be subject to sanction until official guidelines were in place, the Secretary, through his representative, stated:

> There is no statutory basis for us to hold facilities harmless for admitting individuals with mental illness or mental retardation who have not been properly determined by the State to need nursing facility services.... We do not have the authority to prevent the State from recouping those funds from the facilities which had made ... improper admissions.

Exhibit C to Crawford Affidavit. Thus, although the Secretary had only created non-binding (but effective) criteria, and despite the fact that the State of Texas had yet to implement a program, the Secretary on January 10, 1989 told the Plaintiffs that they were subject to loss if they did not comply with the statute. Joseph Heller could not have created a better Catch–22 situation.

The Secretary also argues that even if he has failed to comply with his statutory duties, he is not responsible for the Plaintiffs' harm, because the statute imposes an independent duty upon the State to put a program in place. Indeed, Congress was apparently prepared for the possibility that the Secretary would fail to meet the required deadline, for it provided that:

> The failure of the Secretary to develop minimum criteria under subsection (f)(8) of this section shall not relieve any State of its responsibility to have a preadmission screening program under this subparagraph or to perform resident reviews under subparagraph (8).

42 U.S.C. § 1396r(e)(7)(A). The legislative history indicates that while Congress wanted the law to be in effect by 1989, it did not intend for the implementation of the program to prevent needed services to be provided:

> While the Committee intends to eliminate inappropriate placement of the mentally retarded or mentally ill in nursing facilities, it does not intend that either the State preadmission screening program or the State annual reviews result in the denial of nursing facilities to those who,

because of their physical or mental conditions, need them.

H.R.Rep. No. 391, 100th Cong., 1st Sess. 462 (1987), U.S.Code Cong. & Admin.News 1987, 2313-1, 2313-282. The failure of the Secretary and the State to fulfill their requirements under OBRA, however, have had just that result. *See* discussion below at 1114-15. It is the Court's view that the Secretary's failure to promulgate proper, binding criteria adversely impacted the State's ability to implement a program by January 1, 1989, and the Secretary must therefore share part of the blame for the resulting confusion.

The Court finds that the Plaintiffs are likely to succeed on the merits of their claim under the APA, and that the Plaintiffs have therefore established the first element of their request for injunctive relief against the Secretary.

### 2. *The State's compliance with OBRA*

■ As noted previously, the State was required under OBRA to "have in effect a preadmission screening program" by January 1, 1989. 42 U.S.C. § 1396r(e)(7)(A). The State defendants argue that they have complied with this directive by retroactively publishing a one-page restatement of the statute, and by circulating more recent, unpublished drafts on January 25, 1989. Like the federal guidelines, these drafts have not been the subject of comment, and have not been published. The laws of Texas, like the APA, require such publication and comment. TEX.REV.CIV.STAT.ANN. art. 6252-13a, §§ 3(7) and 5(a)(3) (Vernon Supp.1989). Like the Secretary, the State has recognized its duty to publish rules to govern its screening program. Memorandum of November 1, 1988 from Marlin W. Johnston, Commissioner of the Texas Department of Human Services, at 4, Exhibit A of Chapman Affidavit. For the same reasons as articulated above, the State's guidelines are likely ineffective. The Court therefore finds that the Plaintiffs are likely to prevail in their claims against the State defendants.

### 3. *Vagueness and inconsistencies*

■ The Plaintiffs point out that the current criteria and draft rules are fraught with inconsistencies and are hopelessly vague. The Court agrees that the current state of the rules governing preadmission screening is unacceptable. Just a few examples:

1. The Secretary has taken the position that the screening rules apply to *all* potential nursing home patients, and not just to Medicaid beneficiaries (despite the fact that the statute is an amendment to the Medicaid laws, and despite the obvious freedom to contract problems created by such an interpretation), *see* Letter of January 10, 1989 from William L. Roper, Exhibit C to Crawford Affidavit, while the State has taken the position that the statute applies only to Medicaid beneficiaries, *see* Memorandum of Marlin Johnston at 1-3, Exhibit A to Chapman Affidavit.

2. The statute defines 'mental retardation' as: "An individual is considered to be 'mentally retarded' if the individual is mentally retarded or a person with a related condition...." 42 U.S.C. § 1396r(e)(7)(G).

There are many more inconsistencies or vague provisions, as pointed out in the Plaintiffs' briefs. Until the Secretary and the State promulgate properly issued rules to govern these matters, it is likely that the Plaintiffs will prevail in their vagueness claims.

### C. *Irreparable Injury*

The Plaintiffs' affidavits indicate that because of the uncertainty existing as a result of the Defendants' failure to comply with OBRA, they are in the position of not knowing whether to admit many patients to their nursing facilities. If patients are admitted during this "limbo" period, the Plaintiffs have no idea whether Medicaid payments will be forthcoming. Some patients are being denied admission, and others are being made to obtain family guarantees for payment prior to admission. Some patients are being forced to remain in hospitals, when they truly need nursing home services. If the Plaintiffs refuse someone admission, they lose that source of revenue permanently. If they admit

someone as to whom the Defendants later deny Medicaid payments, they are left with having provided free services.

The Secretary argues that the Plaintiffs lack standing to assert any injury in this case. He argues that the only sanction the Plaintiffs face for improper admissions is the termination of their provider agreements. This, he points out, can only occur after notice and a hearing, and the Plaintiffs would have administrative appellate rights as well. The Secretary's argument completely ignores the reality created by his own inaction. The Plaintiffs' concern in this motion is not future enforcement actions. Rather, they are concerned that they are being forced to make a choice between denying admission to patients they may be able to accept, or accepting patients for whom Medicaid may later deny payment. And they must make this decision without any clear guidelines. The Secretary's standing argument is untenable.

The State also argues that the Plaintiffs are not subject to any irreparable injury, because they only take a risk if they admit someone for whom that individual's physician has answered "yes" to question number 34 on the new Client Assessment, Review, and Evaluation (CARE) form. Question 34 asks: "To your knowledge, does the recipient have a condition of mental illness, mental retardation, and/or developmental disability?" The State argues that so long as the Plaintiffs do not admit anyone for whom they have a "yes" answer to this question prior to screening, they are not subject to any risk. The obvious response to this argument is that there is no corresponding rule that protects the Plaintiffs. The State's arguments are reasonable responses to the problems, and the Court would hope that the State would implement a like rule. In the meantime, however, the Plaintiffs should not be subject to risk because the State has failed to promulgate an appropriate rule.

Thus, the Court finds that the Plaintiffs have demonstrated that without an injunction they are subject to immediate and irreparable injury.

#### D. *Harm to the Respondents*

Any harm that could befall the Defendants if the injunction is issued is slight in comparison to the harm that might occur if an injunction is not issued. Indeed, because the Defendants are governmental agencies, it is very difficult to see what harm they might incur, separate and apart from that suffered by the public. That inquiry is discussed in the next section.

#### E. *The Public Interest*

The Defendants argue aggressively that for the salutory purposes stated above (*see* p. 1111), Congress clearly intended OBRA to take effect on January 1, 1989, and that granting the injunction requested would prevent that from happening. Thus, they argue, the public interest demands that the injunction be denied. The intent of Congress was to provide for the appropriate placement of mentally ill and mentally retarded individuals. As demonstrated in this opinion, the current state of affairs makes such placement difficult, if not impossible. Congress stated that while it intended to stop the improper placement of mentally ill and mentally retarded individuals,

> it d[id] not intend that either the State preadmission screening program or the State annual reviews result in the denial of nursing facilities to those who, because of their physical or mental conditions, need them.

H.R.Rep. No. 391, 100th Cong., 1st Sess. 462 (1987), U.S.Code Cong. & Admin.News 1987, 2313–282. That, however, is what is presently occurring.

The Court is aware that it should tread lightly when it is forced to deal with the imposition of an injunction in this type of situation. Nevertheless, the Court is of the view that granting the injunction will not disserve the public interest, nor will it contravene the intent of Congress. Indeed, it is hoped that this injunction will speed the Defendants to actions that they should have taken, and that the statute required that they take, many months ago. If anyone is to answer to Congress for this action, it should be the Secretary and the

State for not complying with Congress' directives.

## IV. CONCLUSION

The state of affairs created in the wake of OBRA should not have been as sad as it has been in Texas. Congress' intent, which all parties agree was a salutory one, was to end the inappropriate placement of mentally ill and mentally retarded individuals in institutions incapable of providing them the services they need. Unfortunately, and inexplicably, both the Secretary and the State failed to carry out their burdens to implement the program in the time period required by Congress. The result has been the denial of needed treatment to the very individuals Congress was trying to protect.

ACCORDINGLY, IT IS ORDERED that Defendants, and each of their employees, agents, and others acting in concert with them, are hereby enjoined from denying any payments to, or commencing or threatening to commence any enforcement proceedings against, the Plaintiffs based upon non-compliance with any criteria or rules that have been promulgated prior to the date of this Order. The issuance of this injunction is conditioned upon the Plaintiffs posting a bond in the amount of $500.00.