938 F.2d 966
 34 Soc.Sec.Rep.Ser. 237, Medicare&Medicaid Gu 39,460
Brenda SMITH, for herself and as next friend of her minor
daughter; Reyanna Smith, and on behalf of all
others similarly situated, Plaintiffs-Appellants,
v.
Kevin CONCANNON, Director, Department of Human Resources;
Stephen Minnich, Administrator, Adult and Family
Services Division, Defendants-Appellees.
 No. 90-35138.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 11, 1990.
Decided July 10, 1991.
 
 Lorey H. Freeman, Legal Aid Services, Portland, Or., for plaintiffs-appellants.
 John Bagg, Asst. Atty. Gen., Salem, Or., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before CANBY, KOZINSKI and TROTT, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 In 1981, Congress enacted the "lump sum" rule that rendered recipients of Aid to Families with Dependent Children ("AFDC") ineligible for AFDC benefits for a period of time after they receive a lump sum of money from outside sources. 42 U.S.C. Sec. 602(a)(17). This appeal challenges Oregon's application of that lump-sum rule to its Medicaid program.
 
 
 2
 Brenda Smith and her children were receiving AFDC benefits in May of 1989. During that month, Smith received a check for her daughter's retroactive Social Security benefits in the amount of $3,285. Under the AFDC lump-sum rule, the receipt of this check made the Smith family ineligible for AFDC cash benefits for seven months. Smith was not aware of this policy and spent the $3,285 on a car, household supplies, clothes, and dentures.
 
 
 3
 After the Smith family was disqualified from receiving AFDC benefits, Smith requested Medicaid benefits for the family. In determining whether the Smith family was eligible for Medicaid, Oregon applied the lump-sum rule from the AFDC program. See Ore.Adm.Rule 461-04-610. For purposes of eligibility, the Smiths' income was calculated to include the prorated lump sum, as well as $225 per month that they receive in other Social Security benefits. As a result, the Smiths did not qualify for Medicaid until they paid $50 per month in medical bills.
 
 
 4
 Smith brought this class action on behalf of herself, her minor daughter, Reyanna Smith, and others similarly situated. Smith challenges the method employed by the Oregon Department of Human Resources to calculate eligibility for federally subsidized Medicaid benefits. Smith seeks an injunction prohibiting the defendants from "terminating or denying Medicaid benefits to the named plaintiffs and the members of the class they represent by considering lump-sum income which is no longer available in determining eligibility for Medicaid." We affirm the district court's denial of the injunction.
 
 BACKGROUND
 
 5
 Under Title XIX of the Social Security Act, 42 U.S.C. Sec. 1396 et seq., federal financial assistance is available to states electing to furnish medical services to certain needy individuals in accordance with the requirements of other provisions of the Medicaid Act. States which choose to participate must operate in accordance with a state plan for medical assistance approved by the Secretary of Health and Human Services (the Secretary). 42 U.S.C. Sec. 1396. Participating states must also designate a single state agency to administer the program. 42 U.S.C. Sec. 1396a(a)(5). The Oregon Department of Human Resources ("Oregon"), is the administrator here. This agency is responsible for promulgating the regulations necessary for determining Medicaid eligibility in conformity with the Medicaid Act.
 
 
 6
 States choosing to participate in the Medicaid program must provide Medicaid coverage to all persons receiving assistance under the state's AFDC program. The Medicaid Act defines these recipients, along with the aged, blind, and disabled, as "categorically needy." 42 U.S.C. Sec. 1396a(a)(10)(A); 42 C.F.R. Secs. 435.1, .4.
 
 
 7
 Individuals are financially eligible for AFDC, and thus are "categorically needy" under Medicaid, if their income and resources fall below levels established by the AFDC program. In 1981, Congress added the "lump-sum rule" to the formula for determining AFDC eligibility. Congress did not specifically apply this rule to Medicaid eligibility. Under the lump-sum rule, when a member of an AFDC family receives "an amount of earned or unearned income which, together with all other income for that month ... exceeds the State's standard of need," a period of ineligibility for AFDC benefits is imposed. 42 U.S.C. Sec. 602(a)(17)(A). The period of ineligibility is determined by dividing the lump sum by the family's monthly standard of need. Id. Even if the family spends the lump sum immediately and has no funds for support, the disqualification period continues as if the family were budgeting the funds. 42 U.S.C. Sec. 602(a)(17)(A); 45 C.F.R. Sec. 233.20(a)(3)(ii)(F). In essence, the lump-sum payment becomes the family's AFDC grant for a prescribed period.
 
 
 8
 It is possible, however, for a family that is ineligible for AFDC benefits to receive Medicaid. The Medicaid Act provides that states may, at their option, provide Medicaid to the "medically needy." 42 U.S.C. Sec. 1396a(a)(10)(A)(ii). "Medically needy" are those persons who, but for some type of income or resource, would qualify for AFDC and who, according to state standards, are unable to pay their medical bills. 42 C.F.R. Sec. 435.4. Moreover, states participating in the Medicaid program must provide Medicaid benefits to persons who become ineligible for AFDC solely because of "an eligibility requirement used in that program that is specifically prohibited under title XIX [the Medicaid Act]." 42 C.F.R. Sec. 435.113.
 
 
 9
 Oregon participates in the AFDC and Medicaid programs. Under Oregon Administrative Rule 461-04-610, the state applies the federal lump-sum rule to Medicaid recipients who would qualify as "categorically needy" but for nonrecurring lump-sum income. This policy denies Medicaid coverage to otherwise "categorically needy" families whose hypothetical monthly income, including the prorated lump sum, exceeds the "medically needy" income limits. Such families must "spend down" to the "medically needy" income level before becoming eligible for medical assistance. They may do so by incurring medical expenses sufficient to reduce their income below the "medically needy" level. In the case of the Smiths, the necessary "spend down" is $50 per month.
 
 ANALYSIS
 
 10
 Smith argues that the Medicaid statute precludes application of the lump-sum rule because it provides that, in determining eligibility, a state may take into account:
 
 
 11
 ... only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient....
 
 
 12
 42 U.S.C. Sec. 1396a(a)(17)(B) (emphasis added). The Secretary has established no separate standard of "availability" for purposes of Medicaid, but instead has decreed that, "[i]n determining eligibility for families and children, a [state] Medicaid agency must apply the financial eligibility requirements of the State's AFDC plan." 42 C.F.R. Sec. 435.711. With regard to AFDC's identical requirement to consider "available" resources, the Secretary has provided that income is "available" when "actually available" and when "the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance." 45 C.F.R. Sec. 233.20(a)(3)(ii)(D) (emphasis added).[1] Smith argues that, by this definition, her "lump sum" is not available. It has been spent, and it is therefore neither actually available to her, nor is it subject to her legal compulsion.
 
 
 13
 The problem with this argument is that it takes only a fragment of the Secretary's position into account. Alongside his definition of "availability" of resources for purposes of AFDC stands the Secretary's regulation implementing the lump-sum rule. See 45 C.F.R. 233.20(a)(3)(F). And the Secretary has made clear his position that the state, in determining eligibility for mandatory Medicaid, must apply the financial eligibility requirements of its AFDC plan.[2] 42 C.F.R. 435.711; see also 42 C.F.R. 435.4 ("categorically needy" are those "otherwise eligible for Medicaid and who meet the financial eligibility requirements for AFDC").
 
 
 14
 Smith contends, however, that the lump-sum rule is essentially an exception to the statutory standard of "availability" that was engrafted by Congress in 1981 only on AFDC. See 42 U.S.C. Sec. 602(a)(17)(A). Congress, however, was quite aware that Medicaid eligibility has always been pegged on eligibility for AFDC[3]; the two statutes are intrinsically linked. "Medicaid eligibility, with a few exceptions, is entirely derivative from one's AFDC eligibility." Proffit v. Sorrell, 693 F.Supp. 435, 438 (E.D.Va.1988), aff'd without op., 900 F.2d 254 (4th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 165, 112 L.Ed.2d 130 (1990).
 
 
 15
 Here, the Secretary has required the state to apply AFDC eligibility standards to Medicaid, and Oregon has responded by expressly applying the lump-sum rule to recipients otherwise categorically entitled to Medicaid. Oregon Administrative Rules 461-04-610(1)(c). Oregon is entitled to deny mandatory Medicaid to those who are ineligible for AFDC unless those persons are ineligible for AFDC because of "an eligibility requirement used in that [AFDC] program that is specifically prohibited under Title XIX [Medicaid]." 42 C.F.R. Sec. 435.113.
 
 
 16
 We do not find in the Medicaid statute any express prohibition of the lump-sum rule. For reasons already stated, we cannot interpret the definition of "availability," which is expressly made subject to the Secretary's interpretation, as such a specific prohibition. This case is quite distinguishable from Vance v. Hegstrom, 793 F.2d 1018 (9th Cir.1986), in which we held that AFDC's requirement that sibling income be deemed to be that of the applicant was not to be applied to Medicaid. We relied on the fact that the Medicaid statute, unlike the amended AFDC statute, provided that the state must "not take into account the financial responsibility of any individual for any applicant or recipient ... unless such applicant or recipient is such individual's spouse or ... child who is under age 21...." Id. at 1020 (quoting 42 U.S.C. Sec. 1396a(a)(17)). By reason of this provision, "sibling deeming" met the test of being an AFDC disqualifying factor "specifically prohibited under Title XIX," within the meaning of 42 C.F.R. Sec. 435.113. Id. at 1025; see also Malloy v. Eichler, 860 F.2d 1179, 1181 (3rd Cir.1988); Olson v. Norman, 830 F.2d 811 (8th Cir.1987); Reed v. Blinzinger, 639 F.Supp. 130 (S.D.Ind.1986) aff'd, 816 F.2d 296 (7th Cir.1987). There is no such express prohibition here.
 
 
 17
 Smith has argued with much force that the lump-sum rule causes her and others in her situation great hardship. Smith spent her lump sum, on debts or items that certainly were not luxuries, before she was aware that receipt of the sum would disqualify her for either AFDC or Medicaid. Moreover, even her hypothetical income under the lump-sum rule is well below poverty level, and she must expend a significant portion of her meagre actual resources on medical expenses in order to regain eligibility for Medicaid. We do not dispute the hardship accompanying Oregon's application of the lump-sum rule. But that same hardship occurs with regard to AFDC, and the Supreme Court has ruled that this fact does not preclude the enforcement of Congress's decision to disqualify. Gardebring v. Jenkins, 485 U.S. 415, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988). Congress wished to create an incentive for recipients of lump sums to budget such sums for monthly necessities, and to eliminate the incentive to spend the money at once. Id. at 418 n. 3, 108 S.Ct. at 1308 n. 3. The same goals are served by the application of the lump-sum rule to Medicaid. Nothing in the Medicaid Act specifically prohibits such an application. The decision to accept some harsh results in order to achieve incentives Congress reasonably thought desirable was up to Congress and, to the extent Congress chose to delegate the decision, to the Secretary. With that choice we cannot interfere.
 
 
 18
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The Secretary's interpretation of "available" is "entitled to more than mere deference or weight." Schweiker v. Gray Panthers, 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981) (quoting Batterson v. Francis, 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977)). Rather, the Secretary's interpretation is entitled to "legislative effect" because "in a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term." Id. 453 U.S. at 44, 101 S.Ct. at 2640 (quoting Batterson v. Francis, 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977). See also Herweg v. Ray, 455 U.S. 265, 274, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982). Our review of the Secretary's definition of "available" is, therefore, limited to ensuring that he did not exceed his statutory authority and that his regulation is not arbitrary or capricious. Schweiker, 453 U.S. at 44, 101 S.Ct. at 2640
 
 
 [2]
 The government has also made its position clear in this litigation. In a brief amicus curiae filed at our request, the government argues that Oregon's lump-sum rule for Medicaid is consistent with the Secretary's regulations
 
 
 [3]
 The Smiths argue that Congress did not intend the lump-sum rule to affect Medicaid because, in a staff report to the House Ways and Means Committee, the Administration set forth figures for the effect of the 1981 amendments on AFDC and then, in a column for the effect on Medicaid, reported "N.A." Committee Print, "Description of the Administration's Legislative Recommendations Under the Jurisdiction of the Ways and Means Committee, House Ways and Means Committee, Mar. 18, 1981, p. 41. The Smiths interpret this entry to mean "Not Applicable." The government points out, however, that the beginning of the report indicates in two footnotes that "N.A." means "Not Available." Id. at 1 n. 1, 2 n. 1. The government argues that the abbreviation "N.A." must be presumed to mean the same thing thoughout the document. We accept the government's argument