**SELTEL, INC., Plaintiff,**

v.

**NORTH FLORIDA 47, INC., Defendant.**

**No. 86 Civ. 1147 (RLC).**

United States District Court,
S.D. New York.

Nov. 25, 1987.

Battle, Fowler, Jaffin & Kheel, New York City, for plaintiff; Neil E. McDonell, of counsel.

Kelley Drye & Warren, New York City, for defendant; Martin D. Heyert, Sarah L. Reid, Cory E. Friedman, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

In this diversity action, plaintiff moves for a summary judgment dismissing defendant's counterclaims for breach of contract. Defendant, in turn, moves for a summary judgment dismissing plaintiff's first cause of action, again for breach of contract, and cross-moves for summary judgment on its own counterclaims.

## BACKGROUND

Plaintiff, a Delaware corporation with its principal place of business in New York, is the national sales representative for various television stations. Plaintiff sells "spot advertising" time to national advertisers on behalf of the stations it represents. Under an agreement made on December 15, 1983 ("the Agreement"), defendant, a Florida corporation which owns and operates WNFT–TV, channel 47, in Jacksonville, appointed plaintiff as its exclusive national sales representative. The agreement took effect on January 1, 1984, for a term of one year, and provided that it would

automatically renew itself thereafter in periods of one (1) year unless notice in writing is given by either party four (4) months, i.e., (September 1) [sic] prior to the end of any period. Failure to exercise an actual termination by the date specified in such cancellation notice, by either party, shall be deemed a reinstatement of the terms of this agreement.

Agreement at 3. Plaintiff's first cause of action alleges that defendant terminated the contract in breach of this clause.

Under the Agreement, defendant was to pay commissions to plaintiff for all sales of defendant's air time to national advertisers. Commissions were not due, however, on sales made within the state of Florida, nor on most "religious program accounts," even if outside of Florida. Agreement at 1–2. In return, plaintiff

agree[d] to sell a percentage of national spot dollars equal percentage-wise to [defendant's] sign on to sign off share ...

of the total National Spot Dollars spent in the Jacksonville, Florida ADI [Area of Dominant Influence] annually as estimated by current NAB [National Association of Broadcasters] figures for that specific year ...

Agreement at 3. This paragraph concludes with the understanding

that adjustments will be made to offset any religious programs or regional spot dollars contained within the NAB figure totals.

*Id.* The amount of these "adjustments," and defendant's "sign on to sign off share," are at issue in defendant's counterclaims, which allege that plaintiff fell short of its sales commitment for the years 1984 and 1985.

On August 15, 1984, defendant served plaintiff with notice of its intent to terminate the Agreement. Some time thereafter, apparently in September, 1984, officers of plaintiff and defendant met to discuss their mutual dissatisfaction with the parties' relationship. Defendant alleges, and plaintiff disputes, that that meeting resulted in an oral modification by which the Agreement was continued on a month-to-month basis and which required no more than a week's notice to terminate. Plaintiff remained defendant's sales representative throughout 1985. Plaintiff claims to have sold $458,000 in defendant's air time in 1984, and $957,000 in 1985.[1] On January 7, 1986, defendant notified plaintiff that the Agreement was terminated effective January 13, 1986.

Plaintiff complains in its first cause of action that defendant's failure to provide four months' notice of its intention to terminate the Agreement at the end of 1985 operated as an automatic renewal for an additional one-year term.[2] Defendant argues that the Agreement's renewal clause was superseded by the alleged oral modification of September, 1984. Defendant seeks a summary judgment dismissing that cause of action.

Defendant counterclaims for damages it sustained as a result of plaintiff's alleged failure to meet its sales commitments under the Agreement. Defendant calculates that commitment as roughly $700,000 for 1984 and $1 million for 1985. Plaintiff argues that the paragraph defendant sues on is too indefinite to be enforced, and disputes the validity of defendant's calculations. Plaintiff also argues that if an enforceable promise existed, it was nevertheless conditioned on defendant's achieving certain minimum ratings and pricing its advertising time realistically.

## DISCUSSION

### A. *Defendant's counterclaims*

To defeat a properly supported motion for summary judgment, a party who bears the burden of proof on a claim must

make a showing sufficient to establish the existence of [each] element essential to that party's case....

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see* Rule 56(e), F.R.Civ.P. On both of defendant's counterclaims, defendant's burden extends, at a minimum, to three essential elements: (1) that plaintiff was under a contractual duty to generate a specific quantum of advertising revenue for defendant, (2) that plaintiff breached that duty, and (3) that defendant was thereby damaged.[3] Neither party denies the existence of the Agreement. Plaintiff, however, contends that the "adjustment" to be made to the National Association of Broadcasters ("NAB") data, for purposes of computing plaintiff's sales commitment, is inde-

---

**1.** By defendant's reckoning, plaintiff made sales of $324,621.36 in 1984, and $807,367.39 in 1985. Defendant's Response to Plaintiff's First Set of Interrogatories, at 2–3, line g (deducting national sales made by defendant on its own behalf).

**2.** The second and third causes of action in plaintiff's Second Amended Complaint seek commissions allegedly due on sales of defendant's air time made between December, 1985 and December, 1986.

**3.** Defendant's burden also encompasses showing that plaintiff's duty to perform had become absolute. Because of defendant's failure to specify other elements of its case, the court does not reach this one.

terminate.[4] The amount of the adjustment is integral to defendant's claims, both in establishing a breach and in fixing damages. Consequently, to avoid dismissal of its counterclaims at this stage of the proceedings, defendant must "set forth specific facts showing that there is a genuine issue for trial" with respect to the amount of the adjustment. Rule 56(e), F.R.Civ.P.

■ Rule 56(e) requires that affidavits in opposition to a motion for summary judgment be made on personal knowledge, and set forth facts that would be admissible in evidence. *Id. See* 10A Wright, Miller & Kane, Fed.Pract. & Procedure: Civil 2d § 2738 (1983). On the issue of the amount of the adjustment, defendant has come forward with the affidavits of two deponents. Ray Davis, defendant's vice president and general manager, estimates the amount of the adjustment at $5,439,261 for 1984, and at $5,750,000 for 1985. Davis's estimates are based on figures reported to him over the phone by local advertising agencies, and on defendant's own billing. Deposition of Davis at 78–79.

On the other hand, Peter Suess, a certified public accountant retained by the five commercial TV stations in Jacksonville to compile reports for them concerning their amalgamated advertising activity, provides different figures. Based on unaudited data provided to him in confidence by the five stations, Suess sets the adjustment at $1,654,002 for 1984, and $1,403,482 for 1985. Plaintiff contends that both Davis's and Suess's affidavits rest on facts which would not be admissible at trial as they constitute hearsay, and that neither has any basis in personal knowledge.

Davis's affidavit is patently insufficient to meet defendant's burden of production. The affiant's purported estimates of the 1984 and 1985 adjustments to the NAB figures stem from hearsay statements as to the truth of which he professes no personal knowledge. Nor does he provide the court with any reason to believe that the data upon which he relied were accurate or complete. Davis's testimony would be inadmissible at trial, Rule 802, Fed.R.Evid., and "is of insufficient caliber" to meet the standards of Rule 56(e), F.R.Civ.P. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).[5]

Suess's affidavits stand on a different footing. Contrary to plaintiff's assertion, Suess provides evidence within his personal knowledge; specifically, he states that the component data that go to make up the figures he reports were submitted to him by employees of the five commercial television stations in Jacksonville. He is clearly competent so to testify.

The Suess affidavits fail, nonetheless, to "set forth such facts as would be admissible in evidence." Rule 56(e), F.R.Civ.P. Plaintiff asserts that the underlying data are hearsay within no exception, while defendant seeks to bring them within Rule 803(24), Fed.R.Evid., the residual hearsay exception. Because defendant has failed to meet its foundational burden of showing that Suess's figures are what they purport to be, the court does not reach the hearsay question.

Plaintiff impugns the reliability of the data upon which Suess based the figures in his first affidavit by noting certain discrepancies in that data. Suess had stated that

> [t]he data I have collected shows [sic] that the total regional sales that the stations included with their national figures in the Jacksonville market in ... 1985 were $81,320.

Affidavit of Suess at 2, ¶ 3. When plaintiff pointed out that this figure was identical to

---

4. The "adjustment" refers to the sums which must be deducted from the NAB figure labelled "NAT'L/REG'L ADV." This figure apparently lumps together national "spot advertising" revenues for the Jacksonville commercial television stations with "regional" sales and national religious sales. The affidavits and discovery matter before the court do not disclose how the NAB compiles its data.

5. Defendant's argument that the Agreement "only requires *estimates* of the amounts in question," Defendant's Reply Brief at 21, is misguided. The word "estimated" qualifies the NAB figures, not the adjustment. Agreement at 3.

defendant's own regional sales for that year, Plaintiff's Reply Brief at 29, Suess explained that defendant was the only Jacksonville station that "included its regional sales in its national figures" in 1985. Supplemental Affidavit of Suess at 2, ¶ 2. Plaintiff's reproach is that Suess nowhere states that the stations which did not combine their regional and national figures "followed the same practice when submitting information to the NAB." Plaintiff's Surreply Brief at 6.[6]

Under the circumstances, no foundation supports a finding that the figures provided by Suess are the sought-after "adjustments" to the NAB's "national/regional" estimates for 1984 and 1985. At trial, "the relevancy of [the] evidence [in Suess' affidavit would] depend[] upon the fulfillment of a condition of fact," Rule 104(b), Fed.R. Evid.; specifically, it would have to be true that the Jacksonville stations reported sales data to Suess and to the NAB in the same manner. In the absence of evidence on that score, Suess's testimony would be inadmissible, and defendant would not be entitled to have its counterclaims submitted to the jury. See Fed.R.Evid. 104(b) advisory committee's note. Since the standard for granting summary judgment "mirrors the standard for a directed verdict," Anderson, supra, 477 U.S. at 250, 106 S.Ct. at 2511; Celotex, supra, 477 U.S. at 323, 106 S.Ct. at 2553, this failure of proof is fatal to defendant's opposition to plaintiff's motion.

■ The court is, of course, aware of its obligation to resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson, supra, 477 U.S. at 255, 106 S.Ct. at 2513; Wakefield v. Northern Telecom, Inc., 813 F.2d 535, 540 (2d Cir.1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir.1986), cert. denied, ── U.S. ──, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); Meschino v. Int'l Telephone and Telegraph Corp., 563 F.Supp. 1066, 1069 (S.D.N.Y.1983) (Stewart, J.). No adverse inference, however, can be drawn from a gap in the opposing party's evidence. To draw such an inference, indeed, would be to impose an intolerable burden on the movant, whose responsibility is limited to "informing the district court of the basis for its motion, and identifying those portions of ' * * * the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, supra, 477 U.S. at 323, 106 S.Ct. at 2553. Plaintiff has met its burden here.[7]

## B. Plaintiff's claim

■ Plaintiff's first cause of action alleges wrongful termination of the Agreement by defendant. While defendant claims entitlement to summary judgment on its affirmative defense of oral modification,[8] the depositions and affidavits on file do not bear out defendant's assertion that there is no genuine issue of material fact as to the existence or terms of the alleged modification.

Of the six individuals who were present at the September, 1984, meeting—three representing plaintiff and three representing defendant—five gave sworn testimony that they had no recollection of any discussion of a modification at that meeting.[9] Plaintiff, moreover, has submitted various affidavits stating that both uniform indus-

---

6. The point, of course, is that the figures Suess offers purport to be the "adjustment" which, when subtracted from the NAB's "national/regional" figures, will yield the national (non-religious) total. A similar discrepancy appeared with respect to Suess's regional figures for 1984.

7. The unfairness of inferring the missing testimony is highlighted in this instance by the fact that defendant failed, in response to plaintiff's interrogatories seeking the names of all witnesses with relevant knowledge, to inform plaintiff of Suess's existence until after the close of discovery.

8. New York law does not require that oral modification be pled as an affirmative defense where its assertion is "unlikely to take plaintiff by surprise." Foley v. Pac Am Or Bearing, Inc., 105 A.D.2d 1120, 482 N.Y.S.2d 605 (4th Dep't 1984). Defendant's failure to plead it affirmatively here does not, however, alter the fact that defendant bears the burden of persuasion on its defense.

9. Deposition of McGehee at 34–35; Deposition of Maulano at 15–16, 18–20; Deposition of Mulderrig at 88; Deposition of Maloney at 40; Deposition of Fiore at 167–68.

try practice and economic exigencies dictate that "national rep firms" enter contracts terminable on no less than a month's notice,[10] and that plaintiff has never before made a modification to a representation agreement that it did not reduce to writing.[11] Even if the alleged modification had demonstrably taken place, defendant has come forward with no convincing evidence that a week's notice of intent to terminate was sufficient under the terms of that modification.[12]

The question raised by defendant's motion is "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson, supra,* 477 U.S. at 252, 106 S.Ct. at 2512. "Credibility determinations ... are jury functions." *Id.* at 255, 106 S.Ct. at 2513. It would therefore be improper for the court to decide the questions of fact associated with defendant's affirmative defense on its motion for summary judgment.

For the foregoing reasons, plaintiff's motion is granted and defendant's motions are denied.

IT IS SO ORDERED.

---

10.  Maloney Aff't at ¶ 4; Boutis Aff't at ¶ 5.

11.  Mulderrig Aff't at ¶ 3; Boutis Aff't at ¶ 5; Coppinger Aff't at ¶ 10; Maloney Aff't at ¶ 5.

12.  Indeed, the fact that month-to-month contracts are typically terminable on at least thirty days' notice, *see, e.g.,* N.Y. R.P.L. § 232–b (McKinney's 1968), may require defendant to "come forward with more persuasive evidence ... than would otherwise be necessary." *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).