Eleanor ROLOFF, et al., Plaintiffs,

v.

Louis W. SULLIVAN, et al., Defendants.

No. S87–31 (RLM).

United States District Court,
N.D. Indiana,
South Bend Division.

July 24, 1991.

Kent Hull, South Bend, Ind., for plaintiffs.

Gary L. Shaw, Deputy Atty. Gen., Indianapolis, Ind., for Suzanne L. Magnant.

Clifford D. Johnson, Asst. U.S. Atty., South Bend, Ind., Barbara F. Altman, Chicago, Ill., for all other defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on cross-motions for summary judgment filed both by the plaintiffs and the defendants in this cause. The plaintiffs are a class of individuals certified by the court pursuant to Federal Rule of Civil Procedure 23. The named defendants can be separated into two groups, certain officials of the United States Department of Health and Human

Services ("federal defendants")[1] and certain officials of the Indiana Department of Public Welfare ("state defendants").[2] The federal defendants and the state defendants have filed separate summary judgment motions.

The parties have fully briefed the motions which are now ripe for the court's ruling. For the reasons that follow, the defendants' motions will be granted.

## I.

### A.

Medicaid is a federal benefits program administered by the Health Care Financing Administration within the United States Department of Health and Human Services and in conjunction with those states which choose to participate in the program. *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Congress established the Medicaid program in 1965. 42 U.S.C. § 1396 *et seq.* The federal-state Medicaid program is distinct from Medicare, a completely federally-operated medical insurance system for beneficiaries and dependents through the Social Security Administration.

The Medicaid program originally was categorized into four sub-programs: Old Age Assistance, Aid to Families with Dependent Children ("AFDC"), Aid to the Blind, and Aid to the Permanently and Totally Disabled. In 1972, Congress consolidated three of these sub-programs into one program known as Supplemental Security Income ("SSI"). AFDC remained independent from the SSI program.

When Congress reorganized the Medicaid program in 1972, that legislature realized that the restructuring would increase the costs of Medicaid for certain states. The federal government assumed the duty for funding payments and setting the standards of need with respect to the SSI program's benefits. Accordingly in some states, the number of individuals eligible for SSI was significantly larger than the number eligible under the pre–1972 state-administered need programs. Because of the anticipated increase in Medicaid eligibility, Congress feared that some states would choose to withdraw from the Medicaid program entirely, rather than expand their programs to accommodate SSI. *See Schweiker v. Gray Panthers*, 453 U.S. 34, 37–38 & n. 1, 101 S.Ct. 2633, 2636–37 & n. 1, 69 L.Ed.2d 460 (1981).

To relieve the financial burden on the states, Congress offered an option to states wishing to remain part of the Medicaid program. Under the "§ 209(b) option", states could elect to provide Medicaid assistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972. States thus became either "SSI States" or "§ 209(b) States". 42 U.S.C. § 1396a(f); *see also Mattingly by Mattingly v. Heckler*, 784 F.2d 258, 262 & n. 3 (7th Cir.1986); *Winter v. Miller*, 676 F.2d 276, 278 (7th Cir.1982).

After the 1972 restructuring, all states participating in Medicaid were required to provide Medicaid coverage to the "categorically needy" or SSI and AFDC recipients. In addition to the mandatory coverage of the categorically needy, a state could elect to provide Medicaid to another group described as "medically needy", regardless of whether the state had opted for § 209(b) or SSI. The medically needy are defined as those "who meet the nonfinancial eligibility requirements for cash assistance under AFDC or SSI, but whose income or resources exceed the financial eligibility standards for those programs." *Atkins v. Rivera*, 477 U.S. 154, 157, 106 S.Ct. 2456, 2459, 91 L.Ed.2d 131 (1986).

---

1. The federal defendants named in the first amended complaint include: Louis W. Sullivan, Secretary of the United States Department of Health and Human Services; Gail R. Wilensky, Administrator of the Health Care Financing Administration; Michelle Harris, Regional Director of the United States Department of Health and Human Services; and Barbara Gagel, Regional Administrator of the Health Care Financing Administration.

2. The state defendants include Suzanne L. Magnant, Administrator of the Indiana Department of Public Welfare ("IDPW") and "all other persons working at her direction and in concert with her."

A state opting to provide benefits to the medically needy establishes income and resource standards for those persons that generally are higher than those applicable to the state's categorically needy programs. *See generally* 42 C.F.R. §§ 435.-811, 434.812, 435.840, 435.841. Because of this differential, a state deducts from the determination of an applicant's income those "incurred medical expenses that are not subject to payment by a third party ...." 42 C.F.R. § 435.831(c); *see* 42 U.S.C. § 1396a(a)(17). This deduction of incurred medical expenses from income to determine eligibility for medically needy Medicaid benefits is referred to as an "income spend down". In states that have added the medically needy option into their Medicaid programs, an applicant who is financially ineligible for any of the categorically needy cash assistance programs may nevertheless establish eligibility for Medicaid by spending down their medical expenses to offset their income. *Atkins v. Rivera,* 477 U.S. 154, 158, 106 S.Ct. 2456, 2459, 91 L.Ed.2d 131 (1986).

For § 209(b) States, a debate developed concerning the restrictiveness of eligibility standards applicable to the categorically needy and the medically needy. Congress resolved this matter in 1988 by passing legislation permitting § 209(b) States to use less restrictive methodologies than SSI in establishing eligibility of either medically needy or categorically needy individuals for Medicaid benefits. Section 209(b) States could continue to employ methodologies more restrictive than SSI methodologies to determine eligibility for categorically needy Medicaid programs, as long as such methodologies are no more restrictive than those in effect in January 1, 1972. 42 U.S.C. § 1396a(r)(2); *see Mowbray v. Kozlowski,* 914 F.2d 593 (4th Cir.1990).

The State of Indiana participates in the Medicaid program and has enacted legislation authorizing the IDPW to administer Medicaid in Indiana. IND.CODE 12–1–7–14.4. Under that program, Indiana has adopted the § 209(b) option. Indiana's Medicaid program does not provide medical assistance to the "medically needy", as provided in states exercising the SSI option.

Indiana is one of only three states, the others being Missouri and Ohio, which have elected the § 209(b) option and have chosen not to provide Medicaid benefits to the medically needy.

The Indiana legislature currently requires that Medicaid eligibility will not be granted if the total cash value of an individual applicant's (or recipient's) resources exceeds $1,500.00, or $2,250.00 for an applicant (or recipient) and his or her spouse. The IDPW promulgated rules for implementing IND.CODE 12–1–7–18.5. In 1984, the IDPW adopted a rule providing that if an applicant(s) or recipient(s) has total equity value of non-exempt property on the first day of the month that exceeds $1,500.00 ($2,250.00 for married couples), then the applicant or recipient is ineligible to receive Medicaid benefits for that month. 470 I.A.C. § 9.1–3–17 (1991). The 1984 restriction has come to be known as "the first day of the month rule".

Indiana does not allow Medicaid applicants or recipients to offset incurred medical expenses against their resources in excess of those amounts proscribed in IND. CODE 12–1–7–18.5. That procedure, permitted in some other states, is known as "resource spend down".

### B.

Beatrice Beall filed this case in January, 1987 on her own behalf and as the representative of the estate of her sister, Bernice Beall. The Beall sisters are now deceased; Eleanor Roloff represents their interests in this matter. R. Dianne Strickland intervened as a plaintiff and represents the interests of Robert G. Unger, now deceased, and Dorothy Unger. On February 11, 1991, the court certified this action as a class action pursuant to Federal Rule of Civil Procedure 23. Pursuant to that order, the class of persons included as plaintiffs in this action are:

> ... all persons who applied for (and will apply for in the future) Medicaid benefits for the aged, blind, or disabled in the State of Indiana since the promulgation

of the "first day of the month rule" in 1984.

The court further found that Eleanor Roloff and R. Dianne Strickland are proper representatives of the plaintiff class.

The Beall sisters applied for Medicaid benefits for the aged during April, 1986. Their applications were made for them by their nephew Robert Roloff on April 30, 1986. As unmarried persons, the Beall sisters were subject to the $1,500.00 limitation of IND.CODE 12–1–7–18.5. The Beall sisters each were denied Medicaid benefits because each sister had assets totalling more than $1,500.00 as of April 1, 1986.

With the assistance of Eleanor and Robert Roloff, the Beall sisters learned that they could qualify for Medicaid benefits by disposing of their excess resources through creation of irrevocable funeral trusts. Mr. Roloff executed the forms necessary to create such trusts for each of the Beall sisters on April 3, 1986. By placing their excess resources in the funeral trusts, the Beall sisters depleted their resources below the $1,500.00 limitation for Medicaid eligibility. The Beall sisters were awarded Medicaid benefits beginning on May 1, 1986.

The Ungers were married residents of LaPorte, Indiana. Mrs. Unger resides in the Fountainview Nursing Home; Mr. Unger is deceased. Ms. Strickland was appointed guardian for the Ungers on March 28, 1989. An application for Medicaid benefits for Dorothy Unger was made on March 9, 1989 and one for Robert Unger on May 31, 1989. The Ungers were denied Medicaid coverage for the period from February to August, 1989 because their available assets exceeded $2,250.00 for those months. The Ungers were granted Medicaid benefits effective September 1, 1989.

To deplete their resources sufficiently to qualify for Medicaid benefits, the Ungers surrendered their life insurance policies for cash, and then depleted those sums. Because Indiana does not allow applicants to spend down their resources, offsetting them against incurred medical expenses, the Ungers' available resources for February–August, 1989 were not decreased by their debts to the Fountainview nursing facility. Fountainview has brought a civil action against Ms. Strickland, as the Ungers' legal representative, for the Ungers' unpaid bills.

Ms. Roloff and Ms. Strickland filed an amended complaint in this action on May 10, 1990. The first amended complaint alleges that the "first day of the month" rule violates: (1) the Medicaid provisions of the Social Security Act, 42 U.S.C. § 1396a *et seq.*; (2) the Federal Administrative Procedure Act, 5 U.S.C. § 553; (3) the Fifth Amendment to the United States Constitution; (4) the Fourteenth Amendment to the United States Constitution; (5) 42 U.S.C. § 1983; and (6) IND.CODE 4–22–2–3 *et seq.*

## II.

As a preliminary matter, the court must address the state defendants' motion to strike the affidavit of David Kessler, submitted by the plaintiffs in support of their summary judgment motion. The state defendants claim that Mr. Kessler's affidavit is not based on personal knowledge and, therefore, is inadmissible hearsay within the meaning of Federal Rule of Civil Procedure 56(e).

In his affidavit, Mr. Kessler states that he is a staff attorney with the Legal Services Program of Northern Indiana, Inc. and that as part of his responsibilities in that capacity he:

> ... conducted a review of the following documents which Plaintiffs submit in support of their Motion. The documents were originally obtained by attorneys from the Legal Services Organization of Indiana, Inc. either through litigation discovery or review of public records in the Department or other depositories.

Those documents referred to in Mr. Kessler's affidavit, and those attached to that sworn statement, include:

> (a) Pages IV–B–10–12 of the Indiana Department of Public Welfare (DPW) Public Assistance Manual, revised in August, 1971.

(b) Portions of General Public Assistance DPW Bulletin No. 285, dated December 28, 1973, with reference to IV, p. 7–8; IV(E)(2), p. 9–9; and Bulletin 285 A, March 5, 1974, E(2)(a) and (b), p. 5–6.

(c) Compilation of Official Rules and Regulations, with reference to Regulation 2–107 (p. 26–27) and Regulation 2–114 (p. 35–36).

In response to the state defendants' motion, the plaintiffs submit seven responses. First, the plaintiffs contend that the motion to strike does not comply with the requirements of Federal Rule of Civil Procedure 12(f). However, the state defendants did not bring their motion under that rule and, indeed, could not do so since Rule 12(f) deals exclusively with striking portions of pleadings. The state defendants properly have brought their challenge to the plaintiffs' motion under Rule 56(e).

The plaintiffs' additional responses also lack merit. They claim that they have submitted the affidavit of attorney Dennis Frick to support Mr. Kessler's affidavit, but, as explained more fully below, the additional affidavit is lacking for those same reasons that Mr. Kessler's is. The plaintiffs contend that the state defendants also have submitted an affidavit based on hearsay, but the court has before it no motion to strike with respect to that document. The plaintiffs further state that the IDPW does not dispute the genuineness of materials attached to the Kessler motion, but the mere fact of the state defendants' submission of the motion to strike suggests the contrary.

The plaintiffs dispute the classification of Mr. Kessler's affidavit as hearsay. They state that the affidavit falls into the general exception to the hearsay rule found in Federal Rule of Evidence 803(24), but do not explain why. Next, the plaintiffs contend that the court could take judicial notice of the documents attached to Mr. Kessler's affidavit, but fail to demonstrate the authenticity necessary for such a finding. Finally, the plaintiffs argue that the attachments to Mr. Kessler's affidavit do not seek to establish issues of fact, since there are no disputed issues of fact in this cause,

but rather points of law. However, those documents purport to suggest procedures of the IDPW and, therefore, are not materials suggestive of legal conclusions alone.

Federal Rule of Civil Procedure 56(e) provides for the requirements for an affidavit submitted in support of a motion for summary judgment. That rule provides in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith ...

■ Admissibility of an affidavit submitted on summary judgment is an evidentiary question governed by federal law. *Guarantee Trust Life Ins. Co. v. Wood*, 631 F.Supp. 15 (N.D.Ga.1984). Statements supporting a party's position on summary judgment which based on hearsay rather than personal knowledge are not permissible in a Rule 56(e) affidavit. *Garside v. Osco Drug, Inc.*, 895 F.2d 46 (1st Cir.1990); *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 570 n. 4 (7th Cir.1989); *McFeely v. United States*, 700 F.Supp. 414 (S.D.Ind.1988); *Seltel, Inc. v. North Florida 47, Inc.*, 683 F.Supp. 337, 340 (S.D.N.Y.1987).

■ Otherwise unauthenticated documents filed as addenda to a summary judgment motion constitute inadmissible hearsay which the court may not properly consider as evidence on summary judgment. *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135 (7th Cir.1985). Affidavits submitted on a Rule 56 summary judgment motion based on documents or reports received by the affiants, but about which the affiants have no personal knowledge, contain inadmissible hearsay. *Friedel v. City of Madison*, 832 F.2d 965 (7th Cir.1987); *Holland Industries, Inc. v. Adamar of New Jersey, Inc.*, 550 F.Supp. 646 (S.D.N.Y.1982). Moreover, affidavits of attorneys who lack personal knowledge of

information related in supporting documentation are not entitled to consideration on a summary judgment motion. *Sellers v. MC Floor Crafters, Inc.*, 842 F.2d 639 (2nd Cir.1988); *Wyler v. United States*, 725 F.2d 156 (2nd Cir.1983); *Carlock v. Pillsbury Co.*, 719 F.Supp. 791, 798 n. 1 (D.Minn.1989).

■ Mr. Kessler's affidavit, and the documents attached to it, fall squarely within the category of inadmissible hearsay prohibited in an affidavit under Rule 56(e). Mr. Kessler claims no personal knowledge of the attached documents, their origin, or how they were generated or kept. Mr. Kessler, therefore, cannot authenticate those documents.

A court properly should grant a motion to strike an affidavit that does not meet the requirements of Rule 56(e). *Allen v. Scribner*, 812 F.2d 426, 435 n. 18 (9th Cir. 1987); *Davis v. Sears, Roebuck & Co.*, 708 F.2d 862, 864 (1st Cir.1983); *Londrigan v. Federal Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C.Cir.1981). Accordingly, the state defendants' motion to strike the affidavit of David Kessler must be granted.

### III.

In support of their summary judgment motion, the plaintiffs argue that the first day of the month rule violates 42 U.S.C. § 1396a(f) in that it is more restrictive than the Medicaid criteria followed by Indiana on January 1, 1972. The plaintiffs also contend that the first day of the month rule violates 42 U.S.C. § 1396a(a)(17) in that it does not provide for taking into account

... "only such income and resources as are, as determined with standards prescribed by the Secretary available to the applicant or recipient ... prescribed by the Secretary available to the applicant or recipient ..." [as required by subsection (B) ]; or provide for reasonable evaluation of applicants' and recipients' income or resources [as required by subsection (C) ]; and it is not otherwise reasonable as required by paragraph (17).

Finally, the plaintiffs argue that because of the foregoing statutory inadequacies, the first day of the month rule also violates the due process and equal protection clauses of the Fourteenth Amendment, as well as the Fifth Amendment's due process clause, which encompasses an equal protection component. The plaintiffs seek a repeal of the first day of the month rule, along with Indiana's adoption of a procedure for resource spend down and a mechanism for granting an applicant conditional eligibility for Medicaid benefits pending liquidation of insurance policies with cash surrender value.

The federal defendants' motion for summary judgment generally asserts that there is no legal basis for invalidating Indiana's first day of the month rule or requiring that State to implement the two changes proposed by the plaintiffs. More specifically, the federal defendants argue that a § 209(b) State such as Indiana has the options of following SSI methodology or adopting either more liberal or more restrictive standards than SSI methodology, as long as its methodology is no more restrictive than the procedures effective in Indiana on January 1, 1972. The federal defendants further suggest that there is no basis in law, either under the Medicaid Act or elsewhere, for requiring Indiana either to add a provision for resource spend down to its eligibility rules for Medicaid benefits or to grant conditional eligibility pending disposal of excess resources.

The state defendants also contend that they are entitled to judgment as a matter of law on the undisputed facts in this cause. The state defendants generally argue that the first day of the month rule is not violative of Title XIX of the Social Security Act. Specifically, the state defendants note that the first day of the month rule is no more restrictive that the regulations in effect in Indiana as of January 1, 1972. They contend that the use of formulas, such as that rule, are not inherently prohibited under the Medicaid Act.

The state defendants additionally argue that the first day of the month rule has been upheld twice by the Indiana Court of Appeals in *Stockton v. Indiana Dept. of Public Welfare*, 533 N.E.2d 148 (Ind.App.

1988), and *Glaser v. Indiana Dept. of Public Welfare*, 512 N.E.2d 1128 (Ind.App. 1987). They contend that those cases cited by the plaintiffs, *Charleston v. IDPW*, Cause No. 49DO3–8806–CP–0842, Marion Superior Court (June 19, 1989); *Durall v. IDPW*, Cause No. S787–1499, Marion Superior Court (March 1, 1989); *Cochran v. IDPW*, Cause No. 53D03–8804–CP–00470, Monroe Superior Court (February 7, 1990); and *Kane v. IDPW*, Cause No. R–1899, St. Joseph Circuit Court (October 27, 1988), are Indiana trial court decisions which should not take precedent over appellate holdings.

The state defendants also argue that Indiana's failure to allow resource spend down procedures does not violate Title XIX of the Social Security Act and further that the restriction helps preserve limited Medicaid resources. Finally, the state defendants suggest that there is no authority under Title XIX of the Social Security Act to support a mandate requiring Indiana to allow an applicant or recipient to become temporarily eligible for Medicaid benefits while such person liquidates the cash surrender value of life insurance policies.

All parties agree that there remain no genuine issues of material fact and that this cause should be decided on summary judgment as a matter of law, but the record suggests that this agreement may be premature. The plaintiffs contend that Indiana's Medicaid criteria on January 1, 1972 allowed for the following:

> Applicants or recipients who did not have resources below that required to qualify for benefits could establish their eligibility as soon as their resources were reduced to the statutorily protected amount.

> Medicaid applicants or recipients with excess resources in the form of life insurance policies with cash surrender values to liquidate those policies on the condition that proceeds resulting in resources which exceeded the statutorily protected amounts would be devoted to payment of medical creditors or such other permissible purpose as establishment of an irrevocable burial trust.

The federal defendants deny that such criteria were in effect as of January 1, 1972, but claim that resolution of that issue is not material to this action. Specifically, the federal defendants point out that it does not matter whether Indiana had a first day of the month rule as of January 1, 1972, because under the § 209(b) option, a state could either retain eligibility criteria as restrictive as that in 1972 *or* adopt federal SSI standards. Since the first day or the month rule is an SSI standard, 20 C.F.R. § 416.1207(a), Indiana's option for that standard need not be measured against the state's procedures in 1972.

The court agrees that resolution of the apparent factual dispute over what standards were in effect in Indiana as of January 1, 1972 is not material to the issues before this case for the reasons stated above, and those discussed in more detail below.

## IV.

■ A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America*, 909 F.2d 228, 231 (7th Cir.1990). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation*, — U.S. —, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sims v. Mulcahy*, 902 F.2d 524, 540 (7th Cir.), *cert. denied* — U.S. —, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). If he fails to do so, summary judgment is proper. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990); *Tatalovich v. City of Superior*, 904 F.2d 1135, 1142 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 915

F.2d 316, 320 (7th Cir.1990); *Hines v. British Steel Corp.*, 907 F.2d 726, 728 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 660 (7th Cir.1991).

The parties cannot rest on mere allegations in the pleadings, *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991); *McCarthy v. Kemper Life Ins. Companies*, 924 F.2d 683, 687 (7th Cir.1991), or upon conclusory allegations in affidavits. *Mestayer v. Wisconsin Physicians Service Ins. Corp.*, 905 F.2d 1077, 1079 (7th Cir.1990). The court must construe the facts as favorably to the nonmoving party as the record will permit, *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991); *Soldal v. County of Cook*, 923 F.2d 1241, 1245 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Illinois Bell Telephone Co. v. Haines and Co., Inc.*, 905 F.2d 1081, 1087 (7th Cir.1990), as long as the inferences are reasonable. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir.1989).

The court will address the motions with these standards in mind.

### V.

The plaintiffs' position on summary judgment focuses on the reasonableness of Indiana's eligibility requirements for Medicaid benefits in light of certain provisions of the Medicaid Act and other federal laws. The plaintiffs rely on this section of the Medicaid Act, as well as § 1396a(f) (which permits states to select for the § 209(b) option), for the proposition that Indiana's first day of the month rule and refusal to permit resource spend down violate the Act. The plaintiffs accordingly allege that this violation of the Medicaid Act presents an unconstitutional violation of the due process and equal protection clauses. Finally, the plaintiffs suggests that Indiana's first day of the month rule is unenforceable because the rule was not promulgated in accordance with the Administrative Procedure Act ("APA"). Finding itself in disagreement with each of these propositions, the court addresses the argument with respect to the APA first.

### A.

The plaintiffs generally argue that the first day of the month rule should be invalidated because it was not promulgated in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. § 553. The APA generally requires an agency to provide for notice and an opportunity to be heard for interested individuals before promulgating rules and regulations. There is no authority, however, for the proposition that a state must comply with the requirements of the APA when adopting a federally-promulgated rule. The first day of the month rule is an SSI standard now properly promulgated under federal law. 20 C.F.R. § 416.1207(a); *see also Brow v. Sec'y of Health and Human Services*, 627 F.Supp. 1467 (D.Vt.1986). Moreover, the first day of the month role is codified in Indiana regulatory law.

> An applicant or recipient of medical assistance is ineligible for any month in which the total equity value of all non-exempt personal property owned by him and his spouse or parents if he is under 18 exceeds the applicable limitation on the first day of the month.

470 I.A.C. § 9.1–3–17(a).

Several federal courts have held that state procedures regulating Medicaid eligibility are interpretative and, therefore, not subject to the rule-making requirements of the APA. *McKenzie v. Bowen*, 787 F.2d 1216, 1222 (8th Cir.1986); *Morris v. Simpson*, 783 F.2d 454 (4th Cir.1986); *Willey v. Ives*, 696 F.Supp. 1388, 1399–1401 (D.Me.1988). Moreover, two Indiana appellate courts have held that the first day of

the month rule is a properly promulgated State regulation in Indiana. *Stockton v. Dept. of Public Welfare,* 533 N.E.2d 148, 151 (Ind.App.1988); *Glaser v. Dept. of Public Welfare,* 512 N.E.2d 1128, 1131–1132 (Ind.App.1987).

Accordingly, finding no basis in law which supports the plaintiffs' challenge to the first day of the month rule on administrative grounds, the court rejects the plaintiffs' argument on that issue.

### B.

█ The plaintiffs next argue that the first day of the month rule does not comport with the requirements of the Medicaid Act for several reasons. First, they suggest that the rule is more restrictive than the regulations in effect as of January 1, 1972. However, as discussed above, that determination if true, does not invalidate the rule under the Act. A state is only subjected to the limits of those policies in effect as of January 1, 1972 when that state has not adopted SSI eligibility requirements. Since the first day of the month rule is part of the SSI program, Indiana's adoption of that rule complies with its statutory duties under § 1396a(f).

█ The plaintiffs next argue that the first day of the month rule violates the Medicaid Act because it includes no provision for resource spend down. As support for this contention, the plaintiffs refer to two lines of cases, one from Indiana trial courts and the other from states with Medicaid programs distinguishable from the one adopted by Indiana. The court finds neither line of cases persuasive on this issue.

The plaintiffs have contended throughout this litigation that the validity of Indiana's first day of the month rule should be measured by Indiana trial court decisions in *Cochran v. Indiana DPW,* Cause No. 53D03–8804–CP–00470 (Monroe Superior Court, February 7, 1990), *Durall v. Indiana DPW,* Cause No. S787–1499 (Marion Superior Court, March 6, 1989), *Charleston v. Indiana DPW,* Cause No. 49D03–8806–CP–0842 (Marion Superior Court, June 19, 1989), and *Kane v. Indiana*

*DPW,* No. R–1899 (St. Joseph Circuit Court, October 27, 1988).

In *Cochran v. IDPW,* the Monroe Superior Court considered whether Dirk Cochran should have been allowed to adjust his excess resources below the $1,500.00 limit to become eligible for Medicaid benefits. The *Cochran* court held that Mr. Cochran should have been allowed to "spend down" his resources and that it was contrary to law for the IDPW to simply reject his Medicaid application without affording him the opportunity to do so.

The *Cochran* court favorably cited the Marion Superior Court's decision in *Durall v. IDPW,* in which the court held that Agnes Durall should have been allowed to spend down her excess resources through payment of nursing home expenses prior to the IDPW's denial of her application for Medicaid benefits.

The Marion Superior Court again addressed the issue of resource spend down in *Charleston v. IDPW.* There, Ruby Charleston contended that she should not have been denied Medicaid benefits while attempting to spend down her resources. Noting that the IDPW should have allowed Mrs. Charleston to spend down her resources, the court held in favor of Mrs. Charleston.

Finally in *Kane,* the St. Joseph Circuit Court held that the cash obtainable from life insurance policies should not be considered an available resource until received by the Medicaid applicant.

█ In each of these cases, the court held that the IDPW's application of the first day of the month rule was improper because it did not permit resource spend down, and that this procedure violated the Medicaid Act because it is more restrictive than that applied in January 1, 1972. Just as this court cannot view the decisions of another district court as binding precedent, *TMF Tool Co., Inc. v. Muller,* 913 F.2d 1185, 1191 (7th Cir.1990), neither must the court follow state trial court rulings, particularly when they have ruled on federal law. *See Sola Electric Co. v. Jefferson Electric Co.,* 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165

(1942); *Kurek v. Pleasure Driveway & Park District of Peoria*, 583 F.2d 378 (7th Cir.1978), *cert. denied*, 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979). Prior trial court rulings, whether by state or federal courts, are entitled to respectful consideration, but ultimately are entitled only to whatever weight the force of their reasoning warrants. *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir.1987). Here, the court respectfully disagrees with the state trial courts.

Indiana need not provide resource spend down for Medicaid applicants, because the state has not opted to include a program for the medically needy. As discussed both above in outlining the Act's history, and below, only states that have included the medically needy in their Medicaid programs have the obligation to permit resource spend down.

In further support of their assertion that any state's reasonable application of the Medicaid program and/or the first day of the month rule must include spend down, the plaintiffs refer the court to several cases: *Haley v. Commissioner of Public Welfare*, 394 Mass. 466, 476 N.E.2d 572 (1985); *Walter O. Boswell Hospital v. Yavapai County*, 148 Ariz. 385, 389, 714 P.2d 878, 882 (Ariz.Ct.App.1986); *Hession v. Illinois Dept. of Public Aid*, 129 Ill.2d 535, 136 Ill.Dec. 65, 544 N.E.2d 751 (1989); *Kempson v. North Carolina Dept. of Human Resources*, 100 N.C.App. 482, 397 S.E.2d 314 (1990), *stay granted*, 328 N.C. 90, 402 S.E.2d 414 (1991); *Bemowski v. Commonwealth of Pennsylvania, Dept. of Public Welfare*, 136 Pa.Cmwlth. 103, 582 A.2d 103 (1990). All of these cases, however, involved States that had adopted to include a medically needy assistance element in their Medicaid program. Accordingly, under the eligibility rules of those states, an applicant could use the spend down option to meet the income or resource requirements for medically needy benefits, even if such person had income or resources which exceeded the applicable limitations to qualify for categorically needy benefits. Since Indiana has not chosen to provide assistance to the medically needy, it need not adopt the resource spend down

provisions suggested by these cases. *See generally Atkins v. Rivera*, 477 U.S. at 161–162, 106 S.Ct. at 2460–2461.

*Gandenberg v. Barry*, 687 F.Supp. 346 (S.D.Ohio 1988), is more pertinent to the issue of whether a § 209(b) State that has not opted to provide medically needy assistance must allow applicants for categorically needy assistance with the opportunity to resource spend down. As noted above, Ohio (like Indiana) is one of the three states that has exercised the § 209(b) option and further has excluded assistance for the medically needy in its Medicaid program. The *Gandenberg* court considered the issue of whether medicaid applicants for categorically needy assistance were entitled to deduct their incurred medical expenses from non-exempt resources pursuant to the medically needy eligibility requirements of the Act. Recognizing that Ohio had not adopted a program for the medically needy, the court answered that question in the negative. 687 F.Supp. at 349–350. The court finds the *Gandenberg* case persuasive.

The plaintiffs' final challenge to the first day of the month rule also addresses the question of resource spend down. They argue that Indiana applicants should be conditionally eligible for Medicaid benefits pending the liquidation of excess resources, such as life insurance policies. Again, this argument relies in large part on the plaintiffs' contention that Indiana must adopt resource spend down provisions because the Medicaid Act requires it. The court rejects this contention for the reasons stated above.

The plaintiffs offer no persuasive legal authority for the proposition that conditional eligibility must be given to applicants attempting to spend down their resources. The only case cited in support of the plaintiffs' position was reversed on appeal. *Mowbray v. Kozlowski*, 724 F.Supp. 404 (W.D.Va.1989), *rev'd*, 914 F.2d 593 (4th Cir. 1990). The plaintiffs also rely on 42 U.S.C. § 1396a(r)(2) on this issue, arguing that the provision requires a § 209(b) State to adopt SSI methodology (such as the conditional eligibility) since it is not less restrictive

than its own requirements. A plain reading of § 1396a(r)(2) does not support that conclusion. Section 1396a(r)(2) provides in part:

The methodology to be employed in determining income and resource eligibility for individuals ... may be less restrictive, and shall be no more restrictive, than the methodology—

(i) in the case of groups consisting of aged, blind, or disabled individuals, under the supplemental security income program ... or

(ii) in the case of other groups, under the State plan most categorically related.

For purposes of this subsection ... methodology is considered to be "no more restrictive" if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance.

Moreover, permitting such conditional eligibility would directly counter the benefits of the first day of the month rule, which, as discussed above, is valid under the Act.

### C.

■ Section 1396a(a)(17) of Title 42 of the United States Code describes "reasonable standards" for "determining eligibility for and the extent of medical assistance under the Medicaid plan" and states that such eligibility standards must be:

(A) consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and ... as would not be disregarded ... in determining his eligibility for such aid, assistance, or benefits, (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or

... is blind or permanently and totally disabled ... and provide for flexibility in the application of such standards with respect to income by taking into account ... the costs ... incurred for medical care or any other type of remedial care recognized under State law.

While the plaintiffs assert that Indiana's eligibility requirements are unreasonable when considering these standards, they offer no support in furtherance of this position. Several courts have held that Medicaid eligibility requirements that compel individualized factfinding procedures place unnecessary burdens on the administrative agencies implementing those policies.

In *Herweg v. Ray*, 455 U.S. 265, 102 S.Ct. 1059, 71 L.Ed.2d 137 (1982), the Supreme Court stated, "We conclude that the Secretary need not interpret [the Social Security Act] to require an individualized factual determination in each instance as to the amount of income of an applicant's spouse that may reasonably be considered available to the applicant." 455 U.S. at 278, 102 S.Ct. at 1068. In so holding, the Court recognized that a state need not implement procedures to make a factual determination concerning the amount of a non-institutionalized spouse's income reasonably available to support the institutionalized spouse. *Herweg* involved an SSI state, but one court in this circuit has held that the principles of *Herweg* are equally applicable to Indiana. *Brown v. Magnant*, No. 78–773–C, slip op. at 11, n. 4 (S.D.Ind. August 9, 1990).

In *Mattingly v. Heckler*, 784 F.2d 258 (7th Cir.1986), the court also considered the burden of requiring a state to implement factfinding procedures for review of the income of noninstitutionalized spouses. In *Mattingly*, the Seventh Circuit commented that:

Individual factfinding procedures would dissipate the limited resources of the Medicaid program in the increased administrative expense of providing such procedures, thus reducing the amount of funds available to Medicaid recipients, and we hold that individual determina-

tions of need are unnecessary in establishing the monthly maintenance allowance for the non-institutionalized spouse of a Medicaid recipient.

784 F.2d at 268. *See also Schweiker v. Gray Panthers,* 453 U.S. 34, 48, 101 S.Ct. 2633, 2642, 69 L.Ed.2d 460 (1981).

Given the burdens already placed on the IDPW to implement the Medicaid program in Indiana, this court cannot find that the present procedures, even if they do not utilize factfinding, are unreasonable within the confines of the Act.

█ Moreover, a particular deference should be given to the federal and state administrative agencies' application of the Medicaid Act. *DeJesus v. Perales,* 770 F.2d 316 (2nd Cir.1985), *cert. denied,* 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986); *Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977); *Gandenberg v. Barry,* 687 F.Supp. 346, 351 (S.D.Ohio 1988); *see Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Given that deference and the lack of support for the plaintiffs' contention that Indiana's eligibility requirements are unreasonable, the court rejects the plaintiffs' position on this issue as well.

Accordingly, for those reasons stated above, the plaintiffs have failed to establish that the first day of the month rule, and the IDPW's omission from that regulation of a resource spend down provision or a conditional eligibility provision violates the Medicaid Act.

**D.**

The first amended complaint raises several additional grounds for challenging the first day of the month rule. Specifically, the plaintiffs alleged that the defendants have violated the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and IND.CODE 4–22–2–3. The plaintiffs, however, all but abandon these additional claims for relief in their summary judgment motion, mentioning the constitutional claims only briefly.

42 U.S.C. § 1983 authorizes parties to bring civil rights actions against individuals who have allegedly violated their state or federal rights "under color of law". Accordingly, § 1983 offers no independent grounds for relief for a party bringing an action pursuant to that statute. *See generally Patrick v. Jasper County,* 901 F.2d 561, 565 (7th Cir.1990); *Donald v. Polk County,* 836 F.2d 376, 379 (7th Cir.1988).

Section 4–22–2–3 of the Indiana Code sets forth those requirements for an agency's implementing of rules or regulations. The court already has discussed any challenge the plaintiffs maintain based on this provision. Indiana's first day of the month rule was properly promulgated under state law. *Stockton v. Dept. of Public Welfare,* 533 N.E.2d 148, 151 (Ind.App.1988); *Glaser v. Dept. of Public Welfare,* 512 N.E.2d 1128, 1131–1132 (Ind.App.1987).

█ Finally, the plaintiffs' Fifth and Fourteenth Amendment claims must fail as a matter of law. To establish a due process or equal protection claim under law, a party must first demonstrate that a property or liberty interest exists which has not been protected by the defendants' conduct. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Woods v. Thieret,* 903 F.2d 1080 (7th Cir.1990); *Colon v. Schneider,* 899 F.2d 660 (7th Cir.1990). As discussed above, the plaintiffs have established no right or interest in those procedures for Medicaid eligibility which they seek as relief in this cause.

Accordingly, the plaintiffs have failed to establish their right to judgment as a matter of law on those allegations in their amended complaint. Summary judgment in favor of all defendants is appropriate.

**VI.**

Clearly, Indiana could adopt eligibility policies different from those currently utilized by the IDPW. Indiana could eliminate the first day of the month rule, permit resource spend down, and allow conditional eligibility during an applicant's efforts to

spend down. To do so might be more fair to needy applicants, and be better public policy. But the availability of these options to Indiana in no way mandates action by the State to opt for those changes. The plaintiffs' position concentrates far more on what other states have opted to do in administering their Medicaid programs and less on what is mandated by federal law. This court can base its rulings only on the latter.

For the reasons stated above, the court hereby GRANTS the motion to strike the affidavit of David Kessler and ORDERS that document stricken from the record. The court further DENIES the plaintiffs' motion for summary judgment and GRANTS the motions for summary judgment of both the federal defendants and the state defendants. Judgment shall be entered accordingly.

SO ORDERED.